UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAREY HOGG,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF STATE, *et al.*,<br><br>Defendants. | Civil Action No. 25-1925 (RC) |

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS


Table of Contents ..... ii

Introduction ..... 1

Background ..... 2

I. The Allegations ..... 2

II. The Administrative Exhaustion Claims Process ..... 7

III. The Complaint ..... 10

Legal Standards ..... 10

Argument ..... 12

I. Plaintiff Failed to Exhaust Her Administrative Remedies for Many of Her Claims ..... 12

A. Hogg failed to exhaust a claim based on any issue occurring after November 17, 2023 ..... 14

B. Hogg failed to exhaust claims not included in the State Department's amended notice of acceptance of claims ..... 16

II. Failure To State a Claim on the Merits ..... 19

A. Plaintiff's Claim that the State Department Failed to Reasonably Accommodate Her Disabilities Fails to State a Claim (Count I) ..... 19

B. Plaintiff Fails to Plead Plausible Retaliation Claims (Count II) ..... 24

1. Plaintiff's Retaliation Claims Violate Rule 8 By Omitting Material Details and Failing to Explain Her Claims ..... 25

2. Hogg Only Vaguely Alleges Protected Activity ..... 26

3. Hogg Fails to Allege Materially Adverse Actions ..... 28

4. Hogg Fails to Plead Causation ..... 31

C. Plaintiff Has Not Pleaded a Plausible Disability Discrimination Claim (Count III) ..... 34

III. Hogg's Claims for Punitive and Emotional Distress Damages Fail ..... 38

Conclusion ..... 40

The United States Department of State and Marco A. Rubio, in his official capacity as United States Secretary of State ("Defendants"), by and through undersigned counsel, respectfully move under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6) to dismiss Plaintiff Carey Hogg's complaint for lack of jurisdiction and failure to state a claim.

## INTRODUCTION

Plaintiff Carey Hogg's three-count Complaint alleges violations of section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, for the State Department's alleged (1) failure to reasonably accommodate her disability, (2) retaliation, and (3) disparate treatment discrimination. Compl. ¶ 1. Her Complaint fails to state a claim for relief.

First, the Rehabilitation Act requires issue exhaustion, and she has failed to exhaust her administrative remedies as to several discrete alleged adverse actions. Second, her failure to accommodate claim (Count I) defeats itself: she pleaded that the State Department offered her the reasonable accommodation she preferred—telework from home—by offering her a detail to another State Department office, but she refused the accommodation. Third, her retaliation claims (Count II) fail because: (1) they are too vaguely pleaded, noncompliant with Rule 8's requirement of a "short and plain" statement of her claims; (2) she has not properly alleged protected activity (except for her EEO complaint); (3) her alleged adverse actions are not "materially" adverse for purposes of retaliation or otherwise not cognizable because they are duplicative of her failure to accommodate claim; and (4) she has not plausibly pleaded causation because she has not alleged direct evidence, her supervisors' personal knowledge of her protected activity, or circumstantial evidence of temporal proximity permitting an inference of causation. Fourth, her intentional disability discrimination claim (Count III) fails because no pleaded allegations provide direct or circumstantial evidence of discrimination; likewise, she pleads no similarly situated comparator treated differently from which the Court may infer discriminatory intent. Finally, the

Rehabilitation Act permits neither punitive damages nor damages for emotional distress. Thus, her claims should be dismissed.

**BACKGROUND**

**I. <u>The Allegations</u>**

Defendants take the following facts to be true solely for the purpose of evaluating the sufficiency of Hogg's pleadings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Hogg began working at the State Department in 2013. Compl. ¶ 25. She worked for ten years for the State Department as a "Foreign Affairs Officer, GS-0130-14 at the Network Engagement and Training Team (NET), Policy Plans, and Operations Division (PPO), Global Engagement Center (GEC), Office of the Undersecretary of State for Public Diplomacy and Public Affairs." *Id.* ¶ 2.

Hogg experienced "an Anomalous Health Incident (AHI) (but often publicly called Havana Syndrome)." *Id.* ¶ 3. Anomalous Health Incidents "ha[ve] plagued hundreds of American officials stationed abroad in China, Cuba, and elsewhere, including the United States." *Id.* Anomalous Health Incidents "cause a unique form of traumatic brain injury . . . that physicians have termed an 'immaculate concussion,' because it leaves no visible impact to the skull." *Id.* Hogg refers to a report which she says states that "the diagnosed injuries from this affliction are most likely due to pulsed microwave radio frequency radiation." *Id.*

Hogg's Anomalous Health Incident occurred in August 2016. *Id.* ¶ 3. "While working in her former GEC office at Navy Hill in Washington, D.C., Ms. Hogg began experiencing sudden and unexplained physical and psychological symptoms, including headaches, sleeplessness, lightheadedness, nosebleeds, and memory loss." *Id.*; *see* also id. ¶ 27. "Over the next five years following the onset of these symptoms, Ms. Hogg's condition became unpredictable and began to adversely affect different systems of her body." *Id.* ¶ 4. "Nevertheless, she continued to work

full-time, bringing her laptop to countless emergency rooms and hospital stays to ensure her continued exemplary job performance." *Id.* During this period, she "received her first promotion at GEC to a GS-13." *Id.* "[I]n January 2020, GEC senior leadership established reasonable accommodations for" her "that allowed her to telework 'any day, and at any time.'" *Id.* ¶ 4.

In May 2021, she was diagnosed with "an autonomic nervous system dysfunction" caused by a brain injury sustained in the Anomalous Health Incident. *Id.* ¶¶ 5, 28. She was also diagnosed with several related conditions and "receives biweekly treatments at the Mayo Clinic in Arizona for her dysautonomia." *Id.* ¶ 28.

She needed "to attend an estimated five medical appointments on average per week during the core time of her working hours." *Id.* ¶ 29. She admits this "made it difficult for [her] to completes (sic) the essential functions of her job." *Id.* She "continued to work 40 hours per week with the flexible schedule arrangement she had in place with the Agency since January of 2020." *Id.*

Hogg "immediately reported this diagnosis to a supervisor"—without stating to whom. *Id.* ¶¶ 5, 28. She "requested accommodation for her disability from the State Department's Disability and Reasonable Accommodation Division." *Id.* ¶¶ 5, 30. Also "[a]t this time," she "was promoted to a GS-14 position." *Id.* ¶ 5.

"Her former supervisor"—unnamed—"and GEC senior leadership"—all also unnamed—"established a Remote Work Agreement [ ] that allowed Ms. Hogg to continue working full-time while receiving medical care at the Mayo Clinic in Arizona." *Id.* She does not plead exactly when this Remote Work Agreement began.

However, "[o]n March 1, 2023, Orna Blum and GEC's Resources Division Chief, Daniel Gaush, initiated a re-evaluation of [her] current reasonable accommodations." *Id.* ¶ 6. They did

so "via the [Disability and Reasonable Accommodation Division] portal without [her] knowledge, authorization, or consent." *Id.*

Hogg alleged that there were fourteen discrete adverse employment actions against her based on her disability. She describes every minute change in her job since March 2, 2023 as an adverse action.

First, on March 2, 2023, her supervisor Blum told her that she could no longer "manage" "her principal contractor, Kayla Keener" and someone told her "that she could no longer communicate with Ms. Keener." *Id.* ¶¶ 7, 8, 33.

Second, as a result, this prevented Hogg from "effectively oversee[ing] the GEC's [Counter Propoganda and Disinformation] training efforts – her second key duty in her position." *Id.* ¶ 8; *see also id.* ¶ 33.

Third, her contractor, Ed Loo, "resigned." When her supervisors assigned his duties to her instead of "allowing [her] to hire another contractor," this was another allegedly adverse employment action. *Id.* ¶¶ 8, 33.

Fourth, her supervisors "fired" another contractor, Pat Roemer, and assigned his duties to her. *Id.* ¶¶ 8, 34.

Fifth, her supervisor Blum sent her an email. *Id.* ¶¶ 9, 36. This email was entitled "Work Commitment Ideas" and sent on April 10, 2023. *Id.* ¶¶ 9, 36. To Hogg's displeasure, her supervisor had actually given her work directions. *Id.* While this allegation is unclear, it appears that Hogg complains that her supervisor sent her "performance goals" for 2023 on April 10, 2023, and "[t]his was the first time that Ms. Hogg had not been involved in the process"—if by "process" she means the development of her yearly performance goals. *Id.*

Sixth, Blum canceled meetings with her last minute. *Id.* ¶¶ 9, 36. Although Hogg asked Blum to meet with her about her work objectives, Blum cancelled an unstated number of meetings at unstated times. *Id.*

Seventh, Hogg's supervisor Leah Bray told her that when the time period in her previously established remote work agreement expired, Hogg would have to return to work in Washington, D.C. or go on unpaid Family Medical Leave Act leave or leave without pay. *Id.* ¶¶ 10, 38. Hogg's remote work agreement "was set to expire on May 31, 2023." *Id.* ¶ 40. She states that unnamed supervisors were aware that at this time she "was receiving intravenous immunoglobulin [ ] treatments every two weeks." *Id.* ¶ 10. "Ms. Bray gave Ms. Hogg this ultimatum knowing that Ms. Hogg was still waiting for status as a Secretarial Designee to receive medical treatment from Walter Reed's National Military Medical Center in Washington, D.C. Ms. Bray's ultimatum essentially required Ms. Hogg to go to Washington, D.C. without any established [Anomalous Health Incident] medical care or go on unpaid leave status." *Id.*

Eighth, an unnamed person "no longer approved" her "flexible work schedule" at an unspecified time. *Id.* ¶ 39.

Ninth, Hogg complains of a disagreement about the ending time for her remote work agreement. *Id.* ¶ 40. Although her remote work agreement "was set to expire on May 31, 2023," her office "offered to extend it to July 31, 2023, and Ms. Hogg accepted." *Id.* However, "[s]he refused to sign or acknowledge the extension of her" remote work agreement, so her office informed her that "she was no longer on an RWA." *Id.* ¶ 40. Hogg claims that she "accepted" the offer but never alleged that she put the acceptance in writing or signed. *Id.* Confusingly, Hogg then alleged that her office's "management finally agreed to her [remote work agreement]

extension to July 31." *Id.* ¶ 41. So she got the extension anyway, but she still pleads her complaints about the process as her ninth adverse action.

Tenth, unnamed office "management" required her to "give up" her "flexible work schedule" when they "finally agreed to her [remote work agreement] extension to July 31." *Id.* ¶ 41.

Eleventh, Hogg's supervisor Ms. Bray "refused" to extend her remote work agreement past July 31, 2023. *Id.* ¶ 42. So Hogg had "to exhaust her annual leave." *Id.*

Twelfth, Hogg's office "management" offered her what she wanted—"allow[ing] her to continue to work from home." *Id.* ¶ 43. She thinks this was an adverse action, however, because to accept this offer, she needed to agree to a "reassignment' to a "potential detail opportunity with a different [Bureau of the State Department]." *Id.* (internal quotation marks omitted). This reassignment would change her job duties in an unspecified way. *Id.*

Thirteenth, her office "management" marked her as "AWOL" for the time period that she says she was on Family Medical Leave Act leave. *Id.* ¶ 44. This leave allegedly "ended on January 5, 2024." *Id.*

Fourteenth and finally, with the Covid-19 pandemic abating, Hogg's office's management informed her that she needed to return to "in-office work in Washington, D.C." *Id.* ¶ 45. Hogg's management told her that they could no longer extend her remote work agreement past its end date because of "the scope of her position record, classified settings, as well as the jurisdiction of her official domestic duty station"—Washington, D.C.[1] *Id.* All of this was "quite false" by her telling. *Id.*

---

[1] Hogg alleges her "official domestic duty station was changed from Washington, D.C. to Phoenix in February 2022 due to her" medical care. *Id.* ¶ 45(c).

Ultimately, Hogg does not plead that her termination was an adverse action.

## II. The Administrative Exhaustion Claims Process

Defendants draw these facts from Hogg's Complaint, her EEO counselor's report, her formal complaint of discrimination with the State Department's Office of Civil Rights, her amendments of that formal complaint, and related procedural correspondence between Hogg and the State Department.[2] Hogg initiated EEO counseling on April 3, 2023. *See* EEO Counselor's Report, Def. Ex. A at 1.[3] She accepted alternative dispute resolution on May 30, 2023. *Id.* The State Department was unable to process her complaint within the required ninety days, so on June 30, 2023, the Department notified Hogg of her right to file a formal discrimination complaint. Notice of Right to File a Formal EEO Compl., Def. Ex. B at 1-2. On July 14, 2023, Hogg filed a formal complaint of discrimination with the State Department's Office of Civil Rights. Hogg's Formal EEO Complaint, Def. Ex. C at 1-2. Hogg's Complaint provides no details whatsoever about what was in her EEOC complaint. Compl. ¶ 46. Her formal EEO complaint, attached to Defendants' motion here, states:

> I was discriminated against and subjected to a hostile work environment based on my disabilities (AHI and TBI) and/or in reprisal for my prior protected activity (filing an EEO complaint and requesting reasonable accommodation), when:
>
> (1) On March 1, 2023, my former supervisor and former Acting Director of the GEC's Policy, Plans, and Operations (PPO) Division Orna Blum and GEC's

---

[2] "A court may consider a plaintiff's EEO complaint and notice of charge without converting a motion to dismiss into a motion for summary judgment because such records are public documents of which a court may take judicial notice. A court may also rely on final agency decisions, especially to the extent they provide background information such as dates of filings." *Spence v. Wolf*, Civ. A. No. 19-2919 (TJK), 2020 WL 6075727, at *3 (D.D.C. Oct. 15, 2020) (citations and internal quotation marks omitted).

[3] Hogg's Complaint confuses initiating informal EEO counseling with formally filing an EEO complaint, inaccurately stating "Hogg filed her Equal Employment Opportunity Commission ('EEOC') complaint on April 3, 2023." Compl. ¶ 46.

> Resources Division Chief Daniel Gaush initiated a re-evaluation of my current accommodations via DRAD, without my knowledge or consent.
>
> (2) On March 2, 2023, Ms. Blum informed me that I would no longer manage my principal contractor, Kayla Keener.
>
> (3) To date, my supervisory chain has not established my performance goals (PGs) for calendar year 2023.
>
> (4) On May 9, 2023, GEC Deputy Coordinator Leah Bray notified me that, after the expiration of my Remote Work Agreement, I had to return to Washington, DC.
>
> (5) On or about May 9, 2023, Ms. Bray instructed that I would not be able to continue my flexible work schedule, which had been approved since on or about January 8, 2020.
>
> (6) Since at least May 9, 2023, the Agency has failed to accommodate my disabilities.
>
> In her May 9, 2023 email, Ms. Bray acknowledged my need for "flexible work hours to accommodate medical needs" and my June 2022 RWA ("per our agreement in your June 2022 RWA"), which was approved so that I could work remotely from AZ to receive critical treatment for my disabilities at the Mayo Clinic in Scottsdale, AZ. Without continuity of care—specifically, approval for me to receive AHI medical care at Walter Reed's National Military Medical Center, per FY22 and FY23 NDAA regulations—my disabilities prohibit me from returning to DC. The Agency's failure to engage in the interactive process to effectively accommodate me, including its requirement that I return to DC without an established care plan, is a violation of the Rehabilitation Act and its actions are retaliation for my requesting reasonable accommodation of my AHI and TBI, and for filing an EEO complaint.
>
> Regarding Claim 3, I attempted many times to obtain 2023 PGs from my former supervisor and rater Ms. Blum before the March 31, 2023 deadline, but was told no PGs could be generated until we met with my reviewer, Ms. Bray. On April 10, 2023, Ms. Blum sent me draft "Work Commitment Ideas" that she and Ms. Bray had produced without including me in any discussion. Those proposed PGs did not relate to my duties or position and did not meet the requirements of a GS-14-level position. I set up multiple meetings with Ms. Blum and Ms. Bray to discuss my PGs; however, they cancelled every meeting. On July 3, 2023, Ms. Bray sent me official PGs (the responsibilities of the three contractors I used to manage: Ms. Blum directed that Ms. Keener would report to her; my second contractor left; and my third was transitioned out) without explanation of how they align with my portfolio and official roles/responsibilities, and which have not been entered into Performance Next by my new supervisor.

Formal EEO Complaint at 4, Def. Ex. C.

Then, Hogg's complaints—as amended through her attorney and accepted for review by the State Department—were as follows.[4] Amended and Accepted EEO Allegations, Def. Ex. D.

> Because of your disabilities (physical and mental) and reprisal (prior protected activity), you were subjected to discrimination when:
>
> 1. On March 2, 2023, management removed contractor oversight from your job responsibilities;
>
> 2. On May 9, 2023, your remote work arrangement—which had previously been granted as an effective reasonable accommodation—expired, and no effective accommodation has been implemented since;
>
> 3. On July 21, 2023, you received a negative Rater Progress Review Summary;
>
> 4. On November 17, 2023, management notified you that your leave in a prior pay period would be marked as AWOL; and
>
> 5. You have been subjected to hostile work environment harassment, characterized by but not limited to the events listed above and —
>
> > a. Having management seek to re-evaluate the terms of your approved reasonable accommodation since on/about March 1, 2023; and
> >
> > b. Having management fail to establish performance goals for the 2023 performance evaluation period that are consistent with the responsibilities of your position.

*Id.* at 1-2.

Hogg's administrative complaints identified no issue that occurred after November 17, 2023. *See id.* Accordingly, for purposes of exhausting administrative remedies, these issues listed above are the only issues that the State Department considered.

"On July 18, 2024, the Agency accepted Ms. Hogg's claims and issued a Report of Investigation (ROI) and notice to Ms. Hogg's then attorney. Ms. Hogg requested a hearing before an Administrative Judge of the EEOC" and was assigned one in the Washington Field Office. Compl. ¶ 47. "Thereafter, rather than pursuing her case in front of the administrative judge for the

---

[4] The State Department acknowledged and accepted for review Hogg's complaints and amendments on August 23, 2023, and September 12, 2023, January 9, 2024. Amended and Accepted EEO Allegations, Def. Ex. D.

EEOC, Ms. Hogg decided to exercise her right to file a civil action in this Court. On November 18, 2024, Ms. Hogg, through her legal counsel, advised [the EEOC Administrative] Judge [ ] and the [State Department] that Ms. Hogg sought a Right to Sue Notice for purposes of filing a civil lawsuit." *Id.* ¶ 48. The next day, the EEOC Administrative Judge "dismissed the hearing request and remanded the complaint to the Agency for issuance of a Final Agency Decision. A final decision was issued on March 18, 2025." *Id.* ¶ 49. Hogg then sued in this Court.

## III. <u>The Complaint</u>

Hogg filed a three-count Complaint, each count brought under section 501 of the Rehabilitation Act. Count One alleges failure to reasonably accommodate her disability. *Id.* ¶¶ 51-60. Count Two alleges retaliation. *Id.* ¶¶ 61–67. Count Three alleges disparate treatment. *Id.* ¶¶ 68–72.

## LEGAL STANDARDS

A claim warrants dismissal for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Generally, "a district court considering a motion to dismiss for lack of subject matter jurisdiction accepts the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). A plaintiff "must allege well-pleaded facts that support a plausible inference" of subject-matter jurisdiction. *Reid v. Hurwitz*, 920 F.3d 828, 837 (D.C. Cir. 2019). "Because this inquiry deals with a court's power to hear a plaintiff's claim, a Rule 12(b)(1) motion imposes on the Court an affirmative obligation to ensure that it is acting within the scope of its authority." *Bond v. Dep't of Just.*, 828 F. Supp. 2d 60, 69 (D.D.C. 2011). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction[.]" *Id.* In response to a Rule 12(b)(1) motion, the plaintiff must establish that the court has subject-matter jurisdiction over the claims in the complaint. *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008);

*White v. United States*, 791 F. Supp. 2d 156, 159 (D.D.C. 2011). If the plaintiff is unable to do so, the Court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted).

The question of whether the United States has waived its sovereign immunity against suit is, in the first instance, a question of subject matter jurisdiction. *See Yee v. Jewell*, 228 F. Supp. 3d 48, 53 (D.D.C. 2017) (subject matter jurisdiction turns on whether "Congress waived the United States's immunity to suit"). Plaintiff bears the burden of establishing that sovereign immunity has been abrogated. "A plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) (citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003)).

Dismissal also is warranted for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation modified). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

This standard applies equally in employment cases. *Horsey v. Dep't of State*, 170 F. Supp. 3d 256, 263 (D.D.C. 2016). Although a plaintiff need not specifically plead the facts supporting a *prima facie* case, the Court is to rely on the factual allegations in the Complaint as pleaded and, along with the reasonable inferences drawn therefrom, reach appropriate legal conclusions based on those facts. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 n.2 (2002). Simply asserting

discrimination in a pleading is not enough to survive a motion to dismiss. *Horsey*, 170 F. Supp. 3d at 263.

Here, Hogg's Complaint references and includes information regarding her contacts with EEO staff and her EEO complaint. The Court may consider her EEO complaint and the State Department's notices of acceptance of her complaints in deciding this motion to dismiss. *See Green*, 2006 WL 148740, at *6 n.4 (consideration of Agency's Notice of Acceptance of Discrimination Complaint, which was attached to the defendant's motion to dismiss, but not attached to the Complaint, did not convert the motion to dismiss into a summary judgment motion, as it was a document involved in the administrative proceedings underlying the case, the proceedings of which are a matter of public record of which the court could take judicial notice); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) (concluding that, on a motion to dismiss, a court could properly consider "various letters and materials produced in the course of plaintiff's discharge proceedings" that were "referred to in the complaint and [were] central to plaintiff's claims") *aff'd*, 38 F. App'x 4 (D.C. Cir. 2002)); *Marcelus v. Corr. Corp. of Am.*, 540 F. Supp. 2d 231, 235 n.5 (D.D.C. 2008) (deeming EEOC charge and collective bargaining agreement referenced in complaint as incorporated into the complaint).

## ARGUMENT

### I. <u>Plaintiff Failed to Exhaust Her Administrative Remedies for Many of Her Claims</u>

The Rehabilitation Act requires a federal employee to exhaust administrative remedies before filing suit in federal court. *See Spinelli v. Gross,* 446 F.3d 159, 162 (D.C. Cir. 2006); *Williams v. Brennan,* 320 F. Supp. 3d 122, 127-28 (D.D.C. 2018). To exhaust a claim, "[a]n employee of the federal government who believes he or she has been subject to discrimination is first required to 'initiate contact' with an EEO counselor within forty-five days of the allegedly

discriminatory action." *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 171 (D.D.C. 2012) (quoting 29 C.F.R. § 1614.105(a)(1)).

> If the parties are unable to resolve the issue informally, the aggrieved person may file a formal complaint within 15 days of receiving notice of her right to do so from the EEO counselor. See 29 C.F.R. § 1614.105(d). "A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). Within 90 days of receiving a final decision or after the formal complaint has been pending for 180 days, the complainant may file a civil action in federal court. 42 U.S.C. § 2000e-16(c).

*Prescott-Harris v. Fanning*, Civ. A. No. 15-1716 (RC), 2016 WL 7223276, at *3 (D.D.C. Dec. 12, 2016).

As the Supreme Court stated in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *Id*. at 108 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980)). "The purpose behind the regulation is to provide the agency notice and an opportunity to rectify any wrong through the conciliation process or through administrative relief." *Howard v. Evans*, 193 F. Supp. 2d 221, 227–28 (D.D.C. 2002). Only after a plaintiff has timely sought counseling and exhausted her administrative remedies may this Court hear the merits of her claim. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985).

Critically, each discrete claim of discrimination or retaliation must be separately exhausted. *Terveer v. Billington*, 34 F. Supp. 3d 100, 112 (D.D.C. 2014) ("Since *Morgan*, courts in the District of Columbia Circuit have largely refused to take jurisdiction over unexhausted claims of discrete discriminatory acts, such as terminations that occur following the filing of an administrative charge."). *See also Jones v. Ass'n of Am. Med. Colleges*, Civ. A. No. 22-1680 (EGS), 2023 WL 2327901, at *5 (D.D.C. Mar. 2, 2023) ("as a general rule, a Title VII plaintiff must timely exhaust administrative remedies for each discrete act [of discrimination or retaliation] alleged[,] even if

the acts are related.") (cleaned up)). "This means that, under cases in this district, the Supreme Court has 'rejected the "continuing violation" theory that would permit plaintiffs to recover for discrete acts of discrimination and retaliation that were not exhausted but were "sufficiently related" to exhausted claims.'" *Prescott-Harris*, 2016 WL 7223276, at *3; *Hargrove v. AARP*, 205 F. Supp. 3d 96, 119 (D.D.C. 2016) ("The Court is convinced that the 'reasonably related' rule 'no longer reflects the state of the law.'"); *Mahmoud v. Libr. of Cong.*, Civ. A. No. 20-1935 (JEB), 2021 WL 6808293, at *2 (D.D.C. Feb. 9, 2021) ("any decision not to accommodate is a discrete act that must be separately exhausted."). Moreover, "this circuit considers failure to administratively exhaust a Rehabilitation Act by failing to pursue a particular claim before the agency a jurisdictional defect. In these cases, the defendant's exhaustion argument is construed as a motion to dismiss for lack of subject-matter jurisdiction. Because failure to exhaust would preclude jurisdiction, the plaintiff bears the burden of alleging facts sufficient to establish that . . . she exhausted administrative remedies." *Sandler v. Blinken*, Civ. A. No. 21-2226 (DLF), 2022 WL 4547557, at *4–5 (D.D.C. Sept. 29, 2022) (citing *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006)) (quotation marks and other citations omitted).

### A. Hogg failed to exhaust a claim based on any issue occurring after November 17, 2023

Hogg has failed to exhaust several of her adverse actions. Initially, as to the scope of time, Hogg identified no issue in her EEO Complaint after November 17, 2023. *See* Formal EEO Compl. at 4, Def. Ex. C; Amended and Accepted EEO Allegations at 1-2, Def. Ex. D. So Hogg cannot now raise any issue after November 17, 2023, because she has not exhausted it. For example, Hogg's termination occurred after November 17, 2023. She did not administratively exhaust her termination via an EEO complaint. So she cannot sue over it.

Also, the November 17, 2023 formal EEO complaint is the only one relevant to this case. The State Department searched its database that tracks and manages EEO complaints. Hogg's only formal EEO complaint was the one filed in July 2023 discussed above. Erica Solloso Decl. ¶ 6, Def. Ex. E. She informally initiated a matter in April 2023, discussed above. *Id.* Otherwise, she only informally initiated a matter in May 2017 and June 2018 but did not file formal complaints related to those two matters. *Id.*

As numerous cases make clear, a federal government employee cannot proceed with a Title VII or Rehabilitation Act case based on claims she did not include in her EEO complaint, even if she timely filed an EEO complaint with other claims, because the claims are not exhausted. *See Moore v. Dep't of State*, 351 F. Supp. 3d 76, 96 (D.D.C. 2019) (rejecting claim not included in EEO complaint because plaintiff "made no attempt to augment the accepted allegation or amend his EEO complaint prior to the conclusion of the investigation.") (quoting *Green v. Small*, Civ. A. No. 05-1055, 2006 WL 148740, at *6 (D.D.C. Jan. 19, 2006) (alterations omitted)); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 7-8, 16-17 (D.D.C. 2016) (rejecting non-selection claims because plaintiff's EEO complaints discussed other non-selections, but not the one at issue in the federal claim); *Green v. Sessions*, Civ. A. No. 17-1365, 2018 WL 2025299, at *7 (E.D. Va. May 1, 2018) (dismissing claims including constructive discharge claim because the plaintiff "failed to allege these claims in his EEO complaint" and therefore "failed to exhaust his administrative remedies"). Moreover, if the agency proposes a framing of the plaintiff's claims and the plaintiff does not object, the plaintiff's lack of response "supports a finding that [the] plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO." *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 65 (D.D.C. 2015); *see also Van Durr v. Geithner*, Civ. A. No. 12- 2137, 2013 WL 4087136, at *5 (D. Md. Aug. 12, 2013) (dismissing constructive discharge claim against

the Treasury Department as unexhausted because the plaintiff "never challenged the [EEO] Office's characterization of his claims as not relating to constructive discharge" and the "record [did] not reflect that the [EEO] Office ever investigated the theory that Defendant constructively discharged Plaintiff."); *Moore v. Schafer*, 573 F. Supp. 2d 216, 221 (D.D.C. 2008) (dismissing constructive discharge claim for failure to exhaust administrative remedies). Hogg's failure to exhaust administrative remedies for anything occurring after November 17, 2023, bars her from suing over events that happened later, including her termination.

### B. Hogg failed to exhaust claims not included in the State Department's amended notice of acceptance of claims

Moreover, "[i]n cases where the plaintiff did not object" to the claims outlined or accepted in an agency's Notice of Acceptance Letter, courts have found "the plaintiff effectively abandoned any claims that were not listed, and only the events in the Notice of Acceptance letter were administratively exhausted." *Bozgoz v. James*, Civ. A. No. 19-0239 (ABJ), 2020 WL 4732085, at *7 (D.D.C. Aug. 14, 2020); *see also, e.g.*, *Hartzler v. Mayorkas*, Civ. A. No. 20-3802 (GMH), 2022 WL 15419995, at *9 (D.D.C. Oct. 27, 2022) (finding failure to exhaust where agency's Notice of Acceptance letter did not mention claims); *Cheatham v. Holder*, 935 F. Supp. 2d 225, 237 (D.D.C. 2013) (finding failure to exhaust where agency did not include two claims in the issues it agreed to investigate and "[t]hroughout the investigation" the plaintiff "never indicated that the investigation was narrower than his EEO complaint"); *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011) (finding that plaintiff's "'failure to respond to the [agency's] framing of the issue supports a finding that' a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO") (quoting *Sellers v. Dep't of Def.*, Civ. A. No. 07-0418, 2009 WL 559795, at *11–12 (D.R.I. Mar. 4, 2009)); *Green v. Small*, Civ. A. No. 05-1055 (ESH), 2006 WL 148740, at *6 (D.D.C. Jan. 19, 2006) (finding abandonment of

claim alleged in an EEO complaint but not included in an agency's acceptance of claims letter where the complainant fails to respond to the agency's acceptance of claims letter).

Here, Hogg's claims not included in the State Department's amended notice of acceptance of claims are barred for failure to exhaust. *See Bozgoz*, 2020 WL 4732085, at *7. For all the adverse actions discussed in this paragraph, Hogg did not object that the State Department's amended notice of acceptance of claims did not include these alleged matters. Specifically, Hogg did not administratively exhaust her second alleged adverse action—that she was prevented from "effectively oversee[ing] the GEC's [Counter Propoganda and Disinformation] training efforts – her second key duty in her position." *Compare* Compl. ¶¶ 8, 33, *with* Hogg's Amended and Accepted EEO Allegations at 1-2, Def. Ex. D. She also did not administratively exhaust her alleged third and fourth adverse actions—that she was assigned the duties of a contractor who resigned and another contractor who was fired. *Compare* Compl. ¶¶ 8, 33, 34, *with* Formal EEO Compl. at 4, Def. Ex. C; Amended and Accepted EEO Allegations at 1-2, Def. Ex. D. Likewise, she failed to exhaust her alleged fifth adverse action—her displeasure that her supervisor sent her an email on April 10, 2023, entitled "Work Commitment Ideas"; this email stated her "performance goals" for 2023 without her personal involvement in preparing the goals. *Compare* Compl. ¶¶ 9, 36, *with* Formal EEO Compl. at 4, Def. Ex. C; Amended and Accepted EEO Allegations at 1-2, Def. Ex. D.

Hogg also failed to exhaust her alleged sixth adverse action—that her supervisor Blum canceled an unstated number of meetings with her last minute. *Compare* Compl. ¶¶ 9, 36, *with* Amended and Accepted EEO Allegations at 1-2, Def. Ex. D. Moreover, Hogg failed to exhaust her eighth alleged adverse action—that an unnamed person "no longer approved" her "flexible work schedule" at an unspecified time. *Compare* Compl. ¶ 39, *with* Amended and Accepted EEO

Allegations at 1-2, Def. Ex. D. While Hogg exhausted her seventh adverse action—refusal to renew her remote work agreement (Compl. ¶¶ 10, 38, 40), she did not exhaust her alleged ninth adverse action: the State Department's temporary refusal to extend her remote work agreement until July 31, 2023 (which the State Department ultimately did) based on whether she signed and accepted the offer in writing. *Compare* Compl. ¶¶ 40, 41, *with* Formal EEO Compl. at 4, Def. Ex. C; Amended and Accepted EEO Allegations at 1-2, Def. Ex. D. Likewise, Hogg has failed to exhaust her alleged tenth adverse action—unnamed office "management" required her to "give up" her "flexible work schedule" when they "finally agreed to her [remote work agreement] extension to July 31." *Compare* Compl. ¶ 41, *with* Amended and Accepted EEO Allegations at 1-2, Def. Ex. D. Furthermore, Hogg failed to exhaust her alleged twelfth so-called adverse action—the State Department's offer of a *reasonable accommodation* "allow[ing] her to continue to work from home" with a "reassignment' to a "potential detail opportunity with a different department." Compl. ¶ 43 (internal quotation marks omitted) *with* Formal EEO Compl. at 4, Def. Ex. C; Amended and Accepted EEO Allegations at 1-2, Def. Ex. D.

Given Hogg and her counsel's awareness that they could amend the EEO complaints (shown through multiple amendments) (*see generally* Amended and Accepted EEO Allegations, Def. Ex. D), Hogg's choice not to further object to the State Department's acceptance of claims is telling; this means she has abandoned those claims from her EEO complaint and thus failed to exhaust them. The Court should dismiss Hogg's claims based on these identified adverse actions for failure to exhaust.

## II. Failure To State a Claim on the Merits

### A. Plaintiff's Claim that the State Department Failed to Reasonably Accommodate Her Disabilities Fails to State a Claim (Count I)

Count I for failure to accommodate fails to state a claim because the State Department did offer her a reasonable accommodation. She chose, instead, to reject it.

Rehabilitation Act Section 501 prohibits employers from failing to accommodate qualified employees with a disability. The law's basic tenet is that the Government must take "reasonable affirmative steps to accommodate the handicapped, except where undue hardship would result." *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993). A covered employer is required to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Minter v. District of Columbia*, 809 F.3d 66, 69 (D.C. Cir. 2015) (citing 29 U.S.C. § 794(d) (Rehabilitation Act incorporation of ADA standards)). To plead a prima facie case of failure to accommodate, a plaintiff must show (1) that he or she was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of the disability; (3) that with reasonable accommodation the employee could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. *Brown v. Snow*, 407 F. Supp. 2d 61, 67 (D.D.C. 2005); *see also Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007).

If a plaintiff establishes a prima facie case of failure to accommodate, then it is up to the employer to demonstrate that the requested accommodation would have imposed an undue burden on its business; "the ultimate burden, however, remains with the plaintiff." *Faison v. Vance-Cooks*, 896 F. Supp. 2d 37, 49 (D.D.C. 2012) (citing *Barth*, 2 F.3d at 1185–86 (explaining that the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), does not apply to reasonable accommodation claims; such claims should be tested

through the "application of traditional burdens of proof")). "The employee has the burden of identifying reasonable accommodations, and the agency has the burden of showing undue hardship." *Graffius v. Shinseki*, 672 F. Supp. 2d 119, 126 (D.D.C. 2009).

Critically, the D.C. Circuit has explained that "an employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996)). The regulations governing accommodations under the Americans with Disabilities Act ("ADA"), and in turn, the Rehabilitation Act, define reasonable accommodations as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii); *see also Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1260 n. 2 (D.C. Cir. 2008) ("cases interpreting either [statute] are applicable and interchangeable"). A "qualified individual" under the Rehabilitation Act is one who "satisfies the requisite skill, experience, education, and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). Federal regulations provide that "evidence of whether a particular function is essential includes, but is not limited to: [t]he employer's judgment as to which functions are essential; (ii) [w]ritten job descriptions prepared before advertising or interviewing applicants for the job; (iii) [t]he amount of time spent on the job performing the function; (iv) [t]he consequences of not requiring the incumbent to perform the function; (v) [t]he terms of a collective bargaining agreement; (vi) [t]he work experience of past incumbents in the job; and/or (vii) [t]he current work experience of

incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3). Hogg's Complaint did not address any of these factors. Finally, an undue hardship is a "significant difficulty or expense incurred by [an employer.]" 29 C.F.R. § 1630.2(p).

As part of the interactive process, the State Department made Hogg an unusual offer: "allow[ing] her to continue to work from home" with a "reassignment' to a "potential detail opportunity with a different [Bureau of the State Department]." *Id.* ¶ 43 (internal quotation marks omitted). The Complaint does not state that her pay and benefits would have changed. For one, the State Department provided more than a reasonable accommodation, going beyond what was minimally required, because "[a]n employee need not be reassigned if no vacant position exists, [42 U.S.C.] § 12111(9); likewise, employers are not required to 'bump' an employee, or to create a new position." *Aka*, 156 F.3d at 1305 (quoting *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998)).

For another, it is clear from Hogg's complaint that she defeated her own failure to accommodate claim by rejecting the reasonable accommodation State Department offered. *See* Compl. ¶ 43. "[An] employer may choose among reasonable accommodations as long as the chosen accommodation is effective." *Richardson v. Wolf*, Civ. A. No. 17-1588 (ZMF), 2021 WL 3507741, at *6 (D.D.C. July 23, 2021), *report and recommendation adopted sub nom. Richardson v. Mayorkas*, Civ. A. No. CV 17-1588 (EGS), 2023 WL 2562156 (D.D.C. Mar. 17, 2023) (quoting Appendix E. Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under The Americans With Disabilities Act, 2 Disability Discrimination Workplace Appendix E). "Thus, an employer will not liable for rejecting a plaintiff's requested accommodation where it provides reasonable alternative accommodations." *Id.* A plaintiff "rejecting the employer's accommodation" when it was reasonable "is fatal to [p]laintiff's claim." *Id.* The "employer met

its obligation when it provided a reasonable accommodation that the employee rejected." *Id.* (citing *Porter v. Jackson*, 668 F. Supp. 2d 222, 235 (D.D.C. 2009)); see also id. (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996) ("[W]hen an employee requests a transfer as reasonable accommodation and the employer offers alternative reasonable accommodation, which the employee then refuses, the employer cannot be liable for failing to reasonably accommodate the employee by not transferring him to another position.")). Given that Hogg claimed that telework from home would accommodate her disability, Compl. ¶ 63, this would have been an effective reasonable accommodation. However, Ms. Hogg declined the offer. *See id.* ¶ 43. That defeats her failure to accommodate claim. *See, e.g.*, *Richardson*, 2021 WL 3507741, at *6.

Moreover, Hogg is not a "qualified individual" under the Rehabilitation Act because, as pleaded, she could not perform an "essential function" of her position remotely from Arizona. 29 C.F.R. § 1630.2(m). Her management explained (as stated in the Complaint), because of "the scope of her position record, classified settings, as well as the jurisdiction of her official domestic duty station" in Washington, D.C., remote work could no longer be permitted. *Id.* ¶ 45. As pleaded, management stated that her position required her to work in "classified settings" on classified material as part of her job duties. *Id.* She could not do so remotely from home in Arizona.

Likewise, it would not be a reasonable accommodation to remove Hogg's essential function of working in classified settings. A "[r]easonable accommodation does not require an employer to restructure an existing job to remove some of its essential functions." *Geter v. United States Gov't Publ'g Off.*, 436 F. Supp. 3d 227, 234 (D.D.C. 2020), aff'd, No. 20-5043, 2023 WL 4743009 (D.C. Cir. July 25, 2023) (citation omitted). "[A]n accommodation that eliminates an

essential function of a job is unreasonable under the ADA, *even if the employer voluntarily provided such an accommodation in the past*." *Hancock v. Washington Hosp. Ctr.*, 13 F. Supp. 3d 1, 6 (D.D.C. 2014), *aff'd*, 618 F. App'x 4 (D.C. Cir. 2015) (emphasis added). Indeed, "the mere fact that an employer voluntarily accommodates an employee's disability by temporarily eliminating an essential function does not mean that the employer has irrevocably waived the essential function of the job." *Id.* Thus, Hogg's failure to accommodate claim fails. She cannot defeat this point simply by stating it was "false" that her job required work in "classified settings." Compl. ¶ 16. For one, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. For another, Plaintiff does not get to define the job; that is management's role. As explained in a failure-to-accommodate case,

> In *EEOC v. Ford Motor Co.*, the Sixth Circuit observed that "we do not 'allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience.' " 782 F.3d [753,] 764 [(6th Cir. 2015) (en banc)] If that were not the case, "every failure-to-accommodate claim involving essential functions would go to trial because all employees who request their employer exempt an essential function think they can work without that essential function." *Id.* Furthermore, unlike the employer's judgment, which is explicitly mentioned in the statute and EEOC regulations, "[n]either the statute nor regulations nor EEOC guidance instructs courts to credit the employee's opinion about what functions are essential." *Id.*

*Credeur v. Louisiana Through Off. of Att'y Gen.*, 860 F.3d 785, 793 (5th Cir. 2017). Following this principle, just because Hogg says it was "false" that her job required work in classified settings, she also pleaded that management told her that her position required it. Compl. ¶ 16. Further indicating that the position required classified work, Hogg pleaded that she tried to get management to let her use "three 'Classified Drop' USG office in the Phoenix area." *Id.* Notably, Hogg does not plead that these "classified drop" sites exist or how she would use them. Hogg's request to work remotely from Arizona when her position required her to work in classified settings in Washington, D.C. would eliminate an essential function of her position. Even "at the motion to

dismiss stage," Hogg has failed to "dispel" this "obvious alternative explanation[]" for the alleged failure to accommodate. *Ho*, 106 F.4th at 54 (alterations omitted); *see also Iqbal*, 556 U.S. at 682; *see also Williams v. Fam. Health Int'l*, Civ. A. No. 24-2654, 2025 WL 2506580, at *8 n.2 (D.D.C. Sept. 2, 2025) (dismissing complaint where "[p]laintiff essentially alleges that [defendant] provided a logical, nondiscriminatory reason" for the contested action and "[p]laintiff does not allege other facts that allow for a competing inference of discrimination to sustain her claim").

In sum, Hogg's complaint falls short of plausibly pleading that the State Department failed to reasonably accommodate her. She pleaded that the State Department engaged in the interactive process: it offered her a position allowing her to continue to work remotely from home. This was, at a minimum, a reasonable accommodation. Hogg refused this offer. Rejecting this reasonable accommodation defeats her failure to accommodate claim. Although Hogg may have preferred something different, the State Department was not required to provide Hogg the accommodation of her choosing. *See Aka*, 156 F.3d at 1305; *Goodman v. Potter*, 412 F. Supp. 2d 11, 17 (D.D.C. 2005) ("The government is not obligated under the [Rehabilitation Act] to provide [the] plaintiff with every requested accommodation, but only with reasonable accommodation as is necessary to enable her to perform her essential functions."). And her Complaint reveals a reasonable non-discriminatory reason for no longer permitting remote work: it would remove an essential function of her position because her job required her to work in "classified setting" on classified material in her duty station in Washington, D.C. *See* Compl. ¶ 45.

Thus, on the face of her complaint, Count I fails to state a claim for failure to accommodate.

### B. Plaintiff Fails to Plead Plausible Retaliation Claims (Count II)

Hogg repackages her failure-to-accommodate claim as retaliation claims in Count II. These fail for four reasons (beyond failure to exhaust, *see supra*): violating Rule 8's requirement

of "a short and plain statement of the claim showing the pleader is entitled to relief" and failing to properly plead protected activity, material adverse actions, and causation.

To survive a motion to dismiss, a plaintiff must plead that he or she (1) "engaged in statutorily protected activity," (2) the defendant took "a materially adverse action," and (3) his or her "protected activity was a but-for cause of that adverse action." *Ho v. Garland*, 106 F. 4th 47, 51 (D.C. Cir. 2024) (quoting *Howard R.L. Cook & Tommy Shaw Found. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013)). The standards articulated in the Title VII context for retaliation claims apply to the Rehabilitation Act. *See Walker v. District of Columbia*, 279 F. Supp. 3d 246, 271 (D.D.C. 2017).

1. <u>Plaintiff's Retaliation Claims Violate Rule 8 By Omitting Material Details and Failing to Explain Her Claims</u>

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). "Each allegation must be simple, concise, and direct." Rule 8(d)(1). "Taken together, [these] Rules . . . underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004). "If the plaintiff fails . . . to comply with" these rules, "a defendant may move to dismiss . . . any claim against it." Rule 41(b).

As required by Rule 8 of the Federal Rules of Civil Procedure, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and alterations omitted). Providing "fair notice of the claim being asserted . . . permit[s] the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977). It also "serves to sharpen the issues to be litigated and to confine discovery and the presentation of evidence at trial within reasonable bounds." *Id.*

Rule 8 "is by no means exacting," and "accords the plaintiff wide latitude in framing his claims for relief." *Id.* at 499.

Hogg's retaliation claims are insufficiently pleaded under Rule 8. Count II for retaliation first incorporates by reference 24 paragraphs of her Complaint. Compl. ¶ 61. It then alleges her claims in only six paragraphs. *Id.* ¶¶ 62–67. But she alleges fourteen adverse actions, as noted. And Count II makes no effort to tie any particular protected activity to any apposite adverse action. The Court and Defendants need not "piece together" Hogg's theory of the case from clues scattered throughout her Complaint, *Prescott-Harris v. Fanning*, Civ. A. No. 15-1716 (RC), 2016 WL 7223276, at *7 (D.D.C. Dec. 12, 2016) (discussing Rehabilitation Act claims), especially as Plaintiff here is represented by counsel. *See, e.g.*, *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983) (plaintiff "cannot generally be permitted to shift the burden of litigating his case to the courts"). After all, it is Plaintiff's burden to present a "short and plain statement" of her claims. Rule 8(a)(2). Put differently, as then-Judge Ketanji Brown Jackson has explained, "even if the counts in the [ ] Complaint actually state a claim upon which relief can be granted, why should the court be obliged to try to navigate through these papers in order to make that determination? Rule 8(a)'s very purpose is to relieve the Court (and opposing counsel) of that burden: it requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 418 (D.D.C. 2017), *aff'd sub nom. Cooper v. District of Columbia*, No. 17-7021, 2017 WL 5664737 (D.C. Cir. Nov. 1, 2017) (citation and internal quotation marks omitted). In sum, Hogg's vague retaliation claims should be dismissed under Rule 8.

2. <u>Hogg Only Vaguely Alleges Protected Activity</u>

On the protected activity element, the Rehabilitation Act protects the activity of an employee who "has opposed any act or practice made unlawful by this chapter or because such

individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a) (incorporated into the Rehabilitation Act, *see* 29 U.S.C. § 791). While informal complaints—such as emails to management, rather than a formal complaint with an EEO counselor—may constitute protected activity, "[n]ot every complaint garners its author protection." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). Similarly, the Rehabilitation Act protects an employee from retaliation "on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the statutes. *See* 42 U.S.C. § 12203 (Americans with Disabilities Act ("ADA")); *see also* 29 U.S.C. § 791(f) (incorporating ADA standard in 42 U.S.C. § 12203). "While no 'magic words' are required, the [workplace] complaint must in some way allege unlawful discrimination ...." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006).

Hogg alleges three kinds of protected activity: (1) requesting accommodations, (2) "complaining to her supervisors . . . about the Agency's failure to accommodate" her by keeping her on a remote work agreement and flexible work schedule, and (3) "fil[ing] an EEO complaint." Compl. ¶ 63. The issue with her alleged protected activity, discussed further in the causation section, *infra*, is the vagueness. She does not identify when particular protected activity occurred (except for the formal filing of her EEO complaint). This is material to the causation analysis, *infra*, of whether there was sufficient temporal proximity from which the Court could infer causation at the motion to dismiss stage. Without this information, Defendants lack notice of Plaintiff's claims. Thus, Defendants cannot properly frame their defenses. Accordingly, Hogg's retaliation claims should be dismissed.

3. Hogg Fails to Allege Materially Adverse Actions

Hogg's retaliation claims fail because what her Complaint called fourteen adverse actions do not meet the required "materially adverse" standard.

A "materially adverse action" is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). This standard is objective and captures only "significant," rather than "trivial," harms. *Id*. It does not reach every "[m]inor and even trivial employment action[ ] that an irritable, chip-on-the-shoulder employee did not like," *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013), and thus an adverse action "[t]ypically . . . involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits,'" *id*. (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). This standard applies under Title VII and the Rehabilitation Act. *See Baloch*, 550 F.3d at 1198.

Analyzing Hogg's allegedly retaliatory acts shows that they do not meet this threshold. Defendants parse the adverse actions below.

*More Work Since Departures of Contractors*. For Hogg's first through fourth adverse actions, she alleged that she had to do more work since three contractors working with her were either fired or quit. Compl. ¶¶ 7, 8, 33, 34. These are not adverse actions that would deter an objectively reasonably person from raising a discrimination complaint or engaging in other protected activity. *See Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009) ("change in workload a trivial harm") (citation omitted). *Cf. Koch v. Schapiro*, 759 F. Supp. 2d 67, 75 (D.D.C. 2011) ("The fact that a plaintiff has more work on occasion than another does not give rise to a materially adverse action."), *aff'd sub nom.*, *Koch v. White*, No. 14-5101, 2016 WL 1275025 (D.C. Cir. Feb. 8, 2016).

*Lack of Input with Her Supervisor*. For Hogg's fifth alleged adverse action, she complains that her supervisor Blum sent her an email. Compl. ¶¶ 9, 36. To Hogg's apparent displeasure, her supervisor had actually given her work directions. *Id.* While this allegation is unclear, it appears that Hogg complains that her supervisor sent her "performance goals" for 2023 on April 10, 2023, and "[t]his was the first time that Ms. Hogg had not been involved in the process"—if by "process" she means the development of her yearly performance goals. *Id.* Relatedly, her sixth adverse action alleges that her supervisor Blum canceled and unstated number of meetings with her. *Id.* ¶¶ 9, 36. These acts, again, would not deter a reasonable person from protected activity: the "standard for judging harm must be objective, so as to avoid the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Heagney v. Bondi*, Civ. A. No. 24-2592 (SLS), 2025 WL 1496315, at *8 (D.D.C. May 22, 2025) (quoting *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174 (2011)). These cancelled meetings are "petty slights [and] minor annoyances" that "would not deter [a] reasonable employee from making [a] charge of discrimination." *Taylor*, 571 F.3d at 1321 (quoting *Burlington Northern*, 548 U.S. at 68). A court may not serve as a "super-personnel department that reexamines an entity's business decisions." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006) (internal quotation marks omitted).

*Denying Hogg's Requests for Accommodations*. Six of Hogg's adverse actions are that she was denied accommodations when Defendants let her remote work agreement expire, let her flexible work arrangement expire, and then denied her requests to extend both. *See* Compl. ¶¶ 38–42, 45 (alleging seventh, eighth, ninth, tenth, eleventh, and fourteenth adverse actions). None are cognizable as adverse actions for a retaliation claim under the Rehabilitation Act. "Notably, the denial of a request for accommodation cannot by itself support a claim of retaliation based on the

request." *Prescott-Harris*, 2016 WL 7223276, at *8. Otherwise, "if the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled." *Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013); *see also Sandler v. Blinken*, Civ. A. No. 21-2226 (DLF), 2022 WL 4547557, at *7 (D.D.C. Sept. 29, 2022) (dismissing any retaliation claims or intentional discrimination claims under Rehabilitation Act as duplicative of failure-to-accommodate claim). The Court should therefore dismiss any discrete retaliation claims premised on the alleged failure to accommodate Hogg's alleged disability or the revocation of her reasonable accommodation.

Furthermore, as to denial of Hogg's request to telework, "Courts in this and other jurisdictions have repeatedly held that denial of a telework arrangement on its own does not constitute an adverse employment action." *Redmon v. United States Capitol Police*, 80 F. Supp. 3d 79, 86–88 (D.D.C. 2015) (citing cases); *Kirton v. Mayorkas*, Civ. A. No. 18-1580 (RCL), 2021 WL 981241, at *5–7 (D.D.C. Mar. 16, 2021) (finding that denial of telework request was not adverse as Plaintiff did not allege the denial affected salary, job responsibilities, or future employment opportunities); *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 41–43 (D.D.C. 2013) (finding that "the denial of an employee's request to work from home on a few occasions, without more, does not constitute an adverse employment action under Title VII, even under the seemingly broader standard.").

*Offering New Position*. For Hogg's twelfth alleged adverse action, the State Department's offer to change her job duties so that she could maintain a remote work status is not a materially adverse action. *See* Compl. ¶ 43. But the change in job duties never occurred: "[a] long line of cases from this Circuit and others have held that threats, revoked disciplinary plans, and other such ultimately unconsummated actions are not materially adverse for purposes of retaliation claims."

*Prescott-Harris*, 2016 WL 7223276, at *8. For instance, "courts in this district have consistently held that a notice of proposed removal 'ordinarily does not state a materially adverse action,'" because "'[n]o tangible harm or materially adverse consequence' flow[s] directly from it." *Teffera v. Turner*, Civ. A. No. 23-3803, 2025 WL 1900694, at *9 (D.D.C. May 28, 2025) (collecting cases). Likewise, merely *offering* to transfer Hogg to another set of job duties is not an adverse action.

*Being Listed as "AWOL."* For Hogg's thirteenth alleged adverse action, "management" allegedly marked her as "AWOL" for the time period that she says she was on Family Medical Leave Act leave. *Id.* ¶ 44. This leave allegedly "ended on January 5, 2024." *Id.* This, without more, was not a "materially adverse action" that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.

In sum, none of her alleged adverse actions provides a cognizable one to support a retaliation claim. And notably, Hogg does not plead in her Complaint that her termination was an adverse action.

4. <u>Hogg Fails to Plead Causation</u>

Hogg has not "pled sufficient facts to support a plausible inference that [her] protected activity was a but-for cause" of the adverse actions she identifies. *Ho*, 106 F.4th at 51. She pleads no direct evidence of retaliation for any protected activity. Instead, she relies only on alleged circumstances of timing. But she does not plead the required unusually suggestive timeline between any protected activity or retaliation.

Courts sometimes find that "[t]emporal proximity" between the protected activity and the alleged adverse actions can support an allegation of causation at the motion-to-dismiss stage. *See*

*Heagney v. Bondi*, Civ. A. No. 24-2592, 2025 WL 1496315, at *11 (D.D.C. May 22, 2025). As the D.C. Circuit has explained:

> A plaintiff can sometimes plead causation by relying solely on the fact that an adverse action shortly followed the plaintiff's protected activity. *See, e.g.*, *Pratt v. Pompeo*, 318 F. Supp. 3d 34, 40 (D.D.C. 2018) (causation adequately pled based on mere two months between protected activity and adverse action). But the temporal connection must be "close." *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003). Although "neither the Supreme Court nor this court has established a bright-line" rule, "the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012); *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (concluding a gap of twenty months "suggests, by itself, no causality"); *see also Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007), *abrogated on other grounds by Green v. Brennan*, 578 U.S. 547, 136 S.Ct. 1769, 195 L.Ed.2d 44 (2016).

*Ho*, 106 F.4th at 52. Courts have declined to find that a gap of two to two-and-a-half months alone plausibly supports an inference of causation. *Compare id.* ("the ten-month gap alleged here appears to be too long to support an inference of causation on its own."), *Taylor*, 571 F.3d at 1322 (a "two and one-half months" gap is insufficient temporal proximity on its own), *and Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (rejecting argument that "two-month period between [protected activity] and [employee's] discharge establishes a 'causal connection' between the two events" when employee had not pointed to other circumstances suggesting events were related) (favorably cited by *Taylor*, *supra*) *with Heagney*, 2025 WL 1496315, at *11 ("two-month timeline fits within the outer bounds of what courts have recognized as being a sufficiently close temporal proximity"). While "the D.C. Circuit has cautioned district courts not to focus only on timing where other allegations also bear on causation" *Britt v. Washington Metro. Area Transit Auth.*, Civ. A. No. 23-0844, 2024 WL

3509484, at *9 (D.D.C. July 23, 2024), Hogg has alleged no other facts that bear on causation, like animus, degrading comments about her disability, or otherwise.

First, Hogg notified her supervisors "immediately" after her diagnosis in May 2021 with injuries from the Anomalous Health Incident that occurred in 2016. But the first alleged adverse action—her supervisor telling her she could no longer "manage one of her contractors" (even assuming this is a cognizable adverse action)—occurred almost two years later, on March 2, 2023. Compl. ¶¶ 7, 8, 33. So that nearly two-year gap is too long from which to infer causation. *See Ho*, 106 F.4th at 52.

Second, Hogg alleged she engaged in protected activity "when she requested and received official accommodations from [the Disability and Reasonable Accommodation Division] DRAD." Compl. ¶ 63. Although not entirely clear from her Complaint, Hogg appears to allege that she requested and received a remote work agreement as an accommodation in May 2021 or quite soon after. *Id.* ¶ 5. Again, a nearly two-year gap is too long from which to infer causation. *See Ho*, 106 F.4th at 52.

Third, Hogg alleges that her "protected activity" was "complaining to several of her supervisors" about the "failure to accommodate [her] medical condition and continue to keep her on a [remote work agreement] and flexible work schedule in her same position." Compl. ¶ 63. For one, this vague paragraph does not state when she alleged that she complained to supervisors about the failure to accommodate her medical condition nor does it state to whom she complained. Rule 8 requires a "short and plain" statement of her claim for relief. Defendants should not have to guess at her claims. And here, the timeline represents a material fact to her retaliation claim because the Court may infer causation if there is unusually suggestive timeline.

Fourth, Hogg pleads that the complained of re-evaluation of her remote work and flexible work arrangement accommodation occurred *before* she engaged in EEO activities. Her Complaint states that "[o]n March 1, 2023, Orna Blum and GEC's Resources Division Chief, Daniel Gaush, initiated a re-evaluation of [her] current reasonable accommodations." *Id.* ¶ 6. But Hogg did not start EEO activity until *after* this, beginning informal EEO counseling on April 3, 2023 (*see* EEO Counselor's Report at 1, Def. Ex. A) and filing her formal EEO complaint on July 14, 2023. *See* Hogg's Formal EEO Complaint at 1-2, Def. Ex. C. So "[t]he fact that the allegedly retaliatory actions preceded the protected activity precludes a determination that the protected activity caused the defendant to retaliate against the plaintiff." *See Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 79 (D.D.C. 2009).

Fifth, Hogg alleges protected activity "when she filed an EEO complaint pertaining to the Agency's repeated failures." Compl. ¶ 63. She filed her "EEOC complaint on April 3, 2023." *Id.* ¶ 46. Yet she fails to allege knowledge. Without an allegation that a particular supervisor knew of Hogg's EEO complaint before the supervisor took an adverse action against her, Hogg cannot plausibly state causation. *See Walker*, 279 F. Supp. 3d at 270 ("The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity").

Because Hogg has failed to state any retaliation claims, Count II should be dismissed.

### C. Plaintiff Has Not Pleaded a Plausible Disability Discrimination Claim (Count III)

To state an intentional discrimination claim under the Rehabilitation Act, a plaintiff must allege that she suffered an adverse employment action because of her disability. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). *Twombly* and *Iqbal* require that Plaintiff allege these elements with sufficient factual material "to state a claim to relief that is plausible on

its face." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678. Even assuming Hogg pleaded a legally cognizable adverse action, she fails to plead any plausible theory of disability-based discrimination at the pleading's stage relatively low bar.

The Complaint does not include factual allegations of direct evidence of discriminatory intent. Hogg has alleged no discriminatory comments, messages, or remarks from supervisors, coworkers, or anyone. Plaintiff notably does not assert that her supervisors ever made any stray remarks or derogatory statements concerning Plaintiff and her disabilities or disabled individuals generally. Nor are there any facts alleged that support an inference that Plaintiff's superiors harbored negative attitudes towards Plaintiff due to her disabilities. Instead, the Complaint includes only the conclusory allegation that disability was a motivating factor in any alleged adverse action she experienced. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" at the pleading stage. *Iqbal*, 556 U.S. at 678.

Hogg has not pleaded a comparator either. "[A] plaintiff proceeding on only a comparator theory must plead enough facts about those comparators and the relevant context to allow a plausible inference that he was treated differently because of his race." *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025). "At one extreme, it cannot be enough to simply allege that the plaintiff was treated differently from a similarly situated comparator, without additional allegations showing the comparators are in fact 'similarly situated' in some meaningful respect. . . . At the other pole, . . ." the D.C. Circuit "ha[s] never required a complaint to include factual allegations showing that the comparator's circumstances are nearly identical to the plaintiff's in all relevant aspects." *Id.* at 531 (citations and internal quotation marks omitted). Hogg's bare-bones allegations fall well short here.

Instead of pleading facts, Hogg states only a legal conclusion that the Court should disregard: that "[s]olely because of Ms. Hogg's disability, the Agency has treated Ms. Hogg differently than it treats similarly situated employees who are not disabled." Compl. ¶ 69. *See Iqbal*, 556 U.S. at 678.

Hogg's bare-bones allegations made upon information and belief also fail to plead a comparator. She alleges only on information and belief the following: "Plaintiff is informed and believes and there on alleges that other similarly situated but non-disabled officers have not similarly fired from this position been for which they are qualified and who are not disabled." Compl. ¶ 69; *see also id.* ¶ 70 ("Plaintiff is informed and believes and there on alleges that similarly situated employees with the State Department who are not disabled have not been subject to this type of treatment."). Yet the D.C. Circuit "require[s] that [all] allegations based on information and belief be accompanied by a statement of the facts upon which the allegations are based." *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (quotation marks omitted). Accordingly, "[i]t is well-settled that such conclusory allegations supported by information and belief are insufficient to survive a motion to dismiss." *Doe v. Lee*, Civ. A. No. 19-0085 (DLF), 2020 WL 759177, at *6 (D.D.C. Feb. 14, 2020) (quoting *Niedermeier v. Off. of Max S. Baucus*, 153 F. Supp. 2d 23, 31 (D.D.C. 2001)); *see also Mickens v. U.S. Bank Nat'l Ass'n*, Civ. A. No. 18-0928 (KBJ), 2021 WL 3418955, at *5 (D.D.C. Aug. 5, 2021) (plaintiff "merely alleges [certain facts] 'upon information and belief'" and "provide no additional information . . . as necessary to give rise to a plausible [ ] claim"); *PeaceTech Lab, Inc. v. C5 Accelerate LLC*, Civ. A. No. 20-0922 (JDB), 2021 WL 106718, at *8 (D.D.C. Jan. 12, 2021) (an "information and belief" allegation "is conclusory" if there is "no factual support for [a] claim"). Hogg provides no "statement of the facts upon which" her "information or belief" allegations "are based." *Kareem*, 986 F.3d at 866. Rather, her

"information and belief" allegations are threadbare and conclusory, and as such are not entitled to a presumption of truth. *Id.*; *see also Iqbal*, 556 U.S. at 681.

In sum, Hogg's comparator allegations are far too conclusory to pass muster under *Twombly* and *Iqbal*. Indeed, nowhere does the complaint describe any comparator employees, how they were similarly situated, or how they were treated differently than her. *See Joyner*, 140 F.4th at 532-33. Moreover, Hogg "does not allege that the same supervisor or supervisors were responsible for deciding whether" to take the alleged adverse actions here, and the D.C. Circuit "ha[s] repeatedly recognized that whether the same decisionmakers were involved is relevant to whether two employees were similarly situated." *Id.* at 532. Other courts in this District and elsewhere have not hesitated to dismiss disparate treatment Title VII claims with comparable pleading deficiencies. *See, e.g., Harris v. Mayorkas*, Civ. A. No. 21-1083 (GMH), 2022 WL 3452316, at *6 (D.D.C. Aug. 18, 2022) (granting defendant's motion to dismiss plaintiff's race discrimination claims for failing to make such showings); *Beaulieu v. Barr*, Civ. A. No. 15-0896 (TJK), 2019 WL 5579968, at *4 (D.D.C. Oct. 29, 2019) (dismissing discrimination claim where, as here, plaintiff failed to "identify any 'comparator' employees who were treated differently"); *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 7 (D.D.C. 2013) (dismissing disparate treatment claim where, as here, the plaintiff "has not pleaded facts that show that 'all of the relevant aspects of her employment situation were 'nearly identical[ ]' to those of her . . . Caucasian co-worker," such as "the co-worker's job title, or . . . any facts about the co-worker's experience, seniority, or expertise"); *Mejia v. White Plains Self Storage Corp.*, Civ. A. No. 18-12189, 2020 WL 247995, at *5 (S.D.N.Y. Jan. 16, 2020) (dismissing Title VII discrimination claim where the plaintiff "fail[ed] to plausibly allege disparate treatment or impact on the basis of his religion, because he fail[ed] to

describe the existence of any putative comparators or how he was 'treated differently' from them" (quoting the complaint)).

Finally, despite Hogg's allegation that her supervisors knew of her disability, awareness alone does not permit a plausible inference of disability discrimination. *See Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 63 (D.D.C. 2019) ("the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action" (internal quotation marks omitted)); *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996); *see also Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993) (employer's belief that plaintiff could not perform a particular task safely was insufficient to prove perception of disability); *Prickett v. Amoco Oil Co.*, 147 F. Supp. 2d 1147, 1155 (D. Utah 2001) (defendant did not regard plaintiff as disabled simply because it recognized plaintiff's limitations).

In sum, Hogg fails show a causal connection between the alleged adverse actions and discriminatory animus. Accordingly, her disability discrimination claim in Count III should be dismissed.

## III. Hogg's Claims for Punitive and Emotional Distress Damages Fail

Plaintiff seeks punitive and emotional distress damages for all three counts under section 501 of the Rehabilitation Act, alleging that the State Department "intentionally violated" her rights "with malice or reckless indifference." *Id.* ¶¶ 60, 67, 72. But "the Supreme Court has held that neither punitive damages nor damages for emotional distress are recoverable in private suits under the Rehabilitation Act." *Inko-Tariah v. Cap. One Arena*, Civ. A. No. 22-02802 (APM), 2023 WL 3340114, at *4 (D.D.C. May 10, 2023) (dismissing those claims and "claim for humiliation, anguish and intentional infliction of emotional distress") (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022) and *Barnes v. Gorman*, 536 U.S. 181 (2002)); *see*

*also Inko-Tariah v. Budweiser Brew House*, Civ. A. No. 22-7160, 2023 WL 8351588, at *1 (D.C. Cir. June 20, 2023) (per curiam) ("appellant's claim for damages under the Rehabilitation Act fails because punitive damages and damages for emotional distress are not allowed under the Rehabilitation Act."). Courts have explained that plaintiffs bringing claims against the federal government under section 501 of the Rehabilitation Act are not "entitled to punitive damages." *Harley v. Dalton*, 896 F. Supp. 29, 32 (D.D.C. 1995) (citing 42 U.S.C. § 1981a(b)(1)). The statutory framework excludes punitive damages against the federal government: "A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . . ." 42 U.S.C. § 1981a(b)(1).

Because no waiver of sovereign immunity exists for punitive or emotional distress damages under the Rehabilitations Act, Hogg's claims for punitive and emotional distress damages lack statutory basis and should be dismissed.

* * *

## CONCLUSION

For these reasons, Plaintiff Carey Hogg's Complaint should be dismissed.

Dated: February 11, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Mason D. Bracken*
MASON D. BRACKEN
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2523

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAREY HOGG,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF STATE, *et al.*,<br><br>Defendants. | Civil Action No. 25-1925 (RC) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' Motion to Dismiss Plaintiff's Complaint, and the entire record herein, it is hereby

ORDERED that the Motion is GRANTED, and it is further

ORDERED that Plaintiff Carey Hogg's Complaint is dismissed.

SO ORDERED:

________________
Date

________________________________
Rudolph Contreras
United States District Judge