**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAREY HOGG | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 25-01925 (RC) |
| | * | |
| DEPARTMENT OF STATE, et al. | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

* * * * * * * * * * * * *

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 8

II. BACKGROUND ..... 9

A. Factual Overview ..... 9

B. Plaintiff's Administrative EEO History Relevant to This Case ..... 10

III. LEGAL STANDARDS ..... 11

IV. ARGUMENT ..... 11

A. Defendants' Exhaustion Arguments Fail ..... 11

B. Plaintiff Exhausted the Core Factual Nucleus of her Claims, and the Agency had Actual Notice of the Challenged Conduct ..... 12

C. Plaintiff was not Advised of her Employment Termination Until Three Months after She was Terminated ..... 16

D. Defendants' "Post-November 17, 2023" Cut-Off is Overstated and Cannot Support Dismissal of Such Claims ..... 17

E. Hostile Work Environment Allegations Cannot be Artificially Atomized Into Isolated Pieces ..... 19

F. Defendants' Reliance on Notice-of-Acceptance Abandonment Cases is Incomplete and Distinguishable ..... 21

V. PLAINTIFF PLAUSIBLY STATES CLAIMS ON THE MERITS ..... 22

A. Plaintiff States a Plausible Failure to Accommodate Claim (Count I) ..... 22

1. *Plaintiff Plausibly Alleges all Required Elements* ..... 22

2. *Defendants Did Not Engage in Good Faith in the Interactive Process and their Proposed Accommodation Was Not Reasonable* ..... 23

3. *Defendants' "Classified Settings" Rationale is Pretextual* ..... 25

4. *At Minimum, Whether the Proposed "Potential Detail Opportunity" Was a Reasonable Accommodation Presents a Fact Question that Cannot Be Resolved on a Motion to Dismiss* ..... 25

B. Plaintiff Plausibly Pleads Retaliation Claims (Count II) ..... 26

1. *Plaintiff's Retaliation Claim Satisfies Rule 8 and Provides Ample Notice* ..... 27

2. *Plaintiff Adequately Alleges Protected Activity* ..... 28

3. *Plaintiff Plausibly Alleges Materially Adverse Actions* .......... 29

a) The Alleged Conduct Must be Viewed Collectively .......... 30

b) Increased Workload and Duty Changes are Not Trivial .......... 31

c) Denial and Revocation of Accommodation Can Be Materially Adverse in Context .......... 31

d) The Proposed "Potential Detail Opportunity" Can Itself be Materially Adverse .......... 32

e) AWOL Designation is Materially Adverse .......... 33

f) Plaintiff's Retaliation Claim is Not Duplicative Merely Because Some Facts Overlap Count I .......... 34

4. *Plaintiff Alleges Causation* .......... 35

C. Plaintiff Plausibly Pleads a Disability Discrimination Claim (Count III) .......... 36

1. *Plaintiff Is Not Required to Plead Direct Evidence of Discriminatory Intent* .......... 36

2. *Plaintiff Is Not Required to Plead Detailed Comparator Evidence* .......... 37

3. *Plaintiff's Allegations Support a Plausible Inference of Discrimination* .......... 38

4. *Defendants' Reliance on "Awareness Alone" Cases Are Misplaced* .......... 39

VI. DEFENDANTS' DAMAGES ARGUMENT DOES NOT WARRANT DISMISSAL OF THE CLAIMS .......... 39

VII. CONCLUSION .......... 40

# TABLE OF AUTHORITIES

## Cases

*Aka v. Washington Hosp. Ctr.*,
156 F.3d 1284 (1998) .......... 23

*Ames v. Johnson*,
121 F. Supp. 3d 126 (2015) .......... 11, 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 8, 11

*Badwal v. Bd. of Trustees of the Univ. of D.C.*,
139 F. Supp. 3d 295 (2015) .......... 35

*Barth v. Gelb*,
2 F.3d 1180 (1993) .......... 22

*Baxter v. Savannah Sugar Refining Corp.*,
46 F.R.D. 56 (1968) .......... 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 11

*Broderick v. Donaldson*,
437 F.3d 1226 (2006) .......... 29

*Buie v. Berrien*,
85 F. Supp. 3d 161 (2015) .......... 34

*Bultemeyer v. Fort Wayne Community Schools*,
100 F.3d 1281 (1996) .......... 24

*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) .......... 30, 33

*Carter v. Bridenstine*,
No. 17-1752, 2020 WL 1536250 (D.D.C. Mar. 31, 2020) .......... 17

*Cheek v. Western and Southern Life Ins. Co.*,
31 F.3d 497 (1994) .......... 12

*Chien v. Sullivan*,
313 F. Supp. 3d 1 (2018) .......... 34

*Congress v. District of Columbia*,
514 F. Supp. 3d 1 (2020) .......... 29

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
596 U.S. 212 (2022) .......... 39

*Floyd v. Lee*,
968 F.Supp. 2d 308 (2013) ........ 24, 26

*Foxworth v. McDonough*,
712 F. Supp. 3d 1 (2024) ........ 12, 17, 21, 22

*Green v. Sessions*,
No. 17-cv-01365, 2018 WL 2025299 (E.D. Va. May 1, 2018) ........ 18, 21

*Greer v. Paulson,*
505 F.3d 1306 (2007) ........ 33

*Gupta v. East Texas State University*,
654 F.2d 411 (1981) ........ 16

*Harrington v. Pompeo*,
No. 18-cv-1056, 2020 WL 5816217 (D.D.C. Sept. 30, 2020) ........ 35, 36, 37, 38

*Howard v. Gutierrez,*
237 F.R.D. 310 (2006) ........ 28

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ........ 16

*Mathirampuzha v. Potter*,
548 F.3d 70 (2008) ........ 11

*Montgomery v. McDonough,*
No. CV 22-1715 (RC), 2024 WL 1344443 (D.D.C. Mar. 29, 2024) ........ 37, 38

*Moore v. Dept. of State,*
351 F.Supp.3d 76 (2019) ........ 18

*Morris v. Asante Health Systems*,
No. 1:22-CV-01707-CL, 2023 WL 3766615 (D. Or. May 17, 2023) ........ 26, 32

*National Railroad Passenger Corp. v. Morgan,*
536 U.S. 101 (2002) ........ 19

*Pantazes v. Jackson*,
366 F. Supp. 2d 57 (2005) ........ 24, 26

*Park v. Howard Univ*.,
71 F.3d 904 (1995) ........ 12, 13

*Paschal v. District of Columbia,*
65 F. Supp. 3d 172 (2014) ........ 30, 34

*Payne v. Salazar*,
619 F.3d 56 (2010) ........ 13, 15

*Pettway v. American Cast Iron Pipe Co*.,
411 F.2d 998 (1969) ........ 17

*Robinson v. Ergo Solutions, LLC,*
257 F. Supp. 3d 47 (2017) ........................................ 32

*Sanchez v. Standard Brands, Inc.*,
431 F.2d 465 (1970) ........................................ 16

*Sanders v. Kerry*,
180 F. Supp. 3d 35 (2016) ........................................ 12, 32

*Sandler v. Blinken,*
No. 21-cv-2226, 2022 WL 4547557 (D.D.C. Sept. 29, 2022) ........................................ 38, 39

*Santos v. Collins*,
No. CV 24-1759, 2025 WL 1905596 (D.D.C. July 10, 2025) ........................................ 40

*Saunders v. Mills*,
172 F. Supp. 3d 74 (2016) ........................................ 31

*Solomon v. Vilsack*,
763 F.3d 1 (2014) ........................................ 29

*Southeastern. Community College. v. Davis*,
442 U.S. 397 (1979) ........................................ 23

*Swierkiewicz v. Sorema* N.A.,
534 U.S. 506 (2002) ........................................ 8, 27

*Taylor v. Phoenixville Sch. Dist.*,
184 F.3d 296 (1999) ........................................ 23, 24

*University of Wisconsin Bd. of Regents*,
75 F.3d 1130 (1996) ........................................ 23

*Vasser v. McDonald,*
228 F. Supp. 3d 1 (2016) ........................................ 18

*Vega v. Hempstead Union Free School District*,
801 F.3d 72 (2015) ........................................ 35

*Wallace v. Wright,*
No. 24-2906, 2025 WL 3042025 (D.D.C. Oct. 31, 2025) ........................................ 35

*Weber v. Battista*,
494 F.3d 179 (2007) ........................................ 12

*Wiley v. Glassman*,
511 F.3d 151 (2007) ........................................ 13

*Wilson v. Peña,*
79 F.3d 154 (1996) ........................................ 13

*Youssef v. Federal Bureau of Investigation,*
687 F.3d 397 (D.C. Cir. 2012) ........................................ 17

*Zano v. McDonough*,
No. CV 22-2748 (RBW), 2024 WL 2699976 ........ 27, 31, 34

**Statutes**

42 U.S.C. § 1981, *et. seq* ........ 39

29 U.S.C. § 2601, *et. seq* ........ 33, 34

**Rules**

Fed. Civ. Proc. §§ 12 ........ 9, 11

Fed. Civ. Proc. §§ 56 ........ 9

Fed. Civ. Proc., §§8 ........ passim

**Regulations**

29 Code of Federal Regulations §1614.106(d) ........ 12

**PLEASE TAKE NOTICE** that Plaintiff, Carey Hogg ("Plaintiff") hereby opposes Defendant Department of State's ("Defendants") Motion to Dismiss Plaintiff's Complaint as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants ask this Court to resolve a heavily fact intensive federal employment discrimination case at the pleading stage by improperly narrowing the scope of administrative exhaustion, mischaracterizing Plaintiff's reasonable accommodation requests, slicing the administrative record into artificially narrow "accepted issues", and demanding evidentiary detail far beyond what Rule 8 requires.

The Complaint alleges that after years of exemplary service, successful performance, and approved telework and flexibility accommodations necessitated by Plaintiff's AHI/TBI aka Havana Syndrome disability, Defendants abruptly reversed course beginning in March 2023. (Dkt 1, ¶¶6-17). Management initiated re-evaluation of established accommodations without notice, stripped Plaintiff of key leadership duties, undermined her performance structure, interfered with goal setting, threatened revocation of remote work necessary for medical continuity of care, revoked flexible scheduling, escalated scrutiny, and ultimately issued materially adverse actions including negative performance assessment and AWOL-related harm. *Id.*

Plaintiff further alleges that this conduct was motivated by disability discrimination and retaliation for protected activity, including reasonable accommodation requests and EEO activity. (Dkt 1, ¶17). At this stage, the Court must accept all well-pleaded facts as true and draw reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Swierkiewicz v. Sorema* N.A., 534 U.S. 506 (2002).

In Defendants opening paragraph to the Motion, they cite the support for this motion as a Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. Yet, ultimately, what Defendants are trying to do is convert this Motion to Dismiss into a Rule 56 Motion for Summary Judgment. This is evident by the filing of a declaration with exhibits along with the Motion to Dismiss. The Court should treat this as a true motion to dismiss to test the legal sufficiency of the complaint, not resolve factual disputes.

The Motion should be denied in its entirety. Alternatively, any perceived deficiency warrants leave to amend or jurisdictional discovery—not dismissal.

## II. BACKGROUND

### A. Factual Overview

Plaintiff was a long-tenured Foreign Affairs Officer (GS-14) who experienced an on-the-job AHI/TBI aka Havana Syndrome, which required extensive treatment and flexibility. (Dkt. 1, ¶2). She successfully performed essential job functions for years under telework and flexible scheduling arrangements and received strong performance ratings, promotions, and awards. *Id.*

In March 2023, management initiated a re-evaluation of her accommodations through DRAD without her knowledge, removed her oversight of a contractor central to her leadership portfolio, interfered with performance goal setting, imposed ultimatums regarding return to Washington, D.C. without ensuring medical continuity of care, revoked flexible scheduling, and escalated to adverse performance-related actions including a negative RPR and AWOL-related designation. (Dkt. 1, ¶¶6-16).

Plaintiff timely initiated EEO counseling and filed a formal complaint. (Dkt. 1, ¶9). Defendants later accepted the following allegations for investigation: (1) removal of contractor oversight on March 2, 2023; (2) expiration of Plaintiff's remote-work arrangement and failure to

implement an effective accommodation beginning May 9, 2023; (3) a negative Rater Progress Review on July 21, 2023; (4) notice on November 17, 2023 that prior-period leave would be marked AWOL; and (5) hostile work environment harassment characterized by those events and by management's reevaluation of Plaintiff's accommodation and failure to establish performance goals. (Dkt. 1, ¶47).

Defendants now argue that only those precise items can be litigated and that anything after November 17, 2023 or not expressly listed is unexhausted. Yet, a litany of case law supports the opposite position, and the issues Defendants say not exhausted are referenced in the State Department's Final Decision on Plaintiff's EEO case. (Hogg Decl., ¶3 and Ex. A).

They also argue that Count One fails because Plaintiff allegedly rejected a reasonable accommodation in the form of a detail allowing remote work; that Count Two fails under Rule 8, protected-activity, material-adversity, causation, and duplicative-theory principles; and that Count Three fails for lack of discriminatory indicia or comparators. A simple reading of the Complaint negates each of these arguments

**B. <u>Plaintiff's Administrative EEO History Relevant to This Case</u>**

Plaintiff filed in EEOC complaint on April 3, 2023. (Dkt. 1, ¶46). Plaintiff later amended the allegations. Defendant accepted and later expanded the allegations to include, among other things: removal of contractor oversight (March 2, 2023), expiration/non-implementation of an effective accommodation (May 9, 2023 and continuing), negative Rater Progress Review Summary (July 21, 2023), AWOL notice (Nov. 17, 2023), and hostile work environment including reevaluation of accommodations and failure to establish performance goals. (Hogg Decl., Ex. A).

## III. LEGAL STANDARDS

**Rule 12(b)(6)**. A complaint survives if it contains enough factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept factual allegations as true and draw reasonable inferences for Plaintiff. Employment discrimination plaintiffs need not plead a prima facie case; they must plead facts that make discrimination/retaliation plausible. As *Ames v. Johnson*, 121 F. Supp. 3d 126 (D.D.C. 2015), explains, Rule 8 is satisfied so long as the complaint gives fair notice of the claim and the grounds upon which it rests.

**Rule 12(b)(1) and Exhaustion**. As shown below, all of Plaintiff's allegations were exhausted prior to filing this lawsuit. Notwithstanding, the exhaustion requirement is relaxed under the "reasonably related" doctrine if, "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008). The "reasonably related" inquiry requires a fact-intensive analysis. "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [EEO] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Id.*

## IV. ARGUMENT

### A. <u>Defendants' Exhaustion Arguments Fail</u>

The exhaustion requirement is interpreted broadly. The allegedly unexhausted issues that Defendant argue should be precluded are reasonably related to or grow out of the claims that were Defendants admit were properly exhausted in Plaintiff's EEO complaint. A lawsuit following the EEOC charge is limited in scope to claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.

Cir. 1995) citing *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994). At a minimum, the claims must arise from "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.*

Additionally, the Defendants had actual notice of these related claims through the interactive accommodation process, satisfying the core purpose of the exhaustion requirement, which is to give the agency notice and opportunity to address the issues internally.

### B. Plaintiff Exhausted the Core Factual Nucleus of her Claims, and the Agency had Actual Notice of the Challenged Conduct

The administrative record itself defeats Defendants' claim that they lacked notice. Plaintiff initiated counseling, filed a formal complaint, amended her allegations, and the Defendants accepted for investigation the core accommodation, performance-review, AWOL, and hostile-environment allegations at issue here.

"A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. §1614.106(d). A plaintiff who amends her complaint to allege new instances of discrimination or retaliation does not need to reengage in the informal EEO process, because the amendment puts the agency on notice of the conduct at issue. *Sanders v. Kerry*, 180 F. Supp. 3d 35, 43 (D.D.C. 2016); *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007) (holding that the plaintiff exhausted her administrative remedies by amending her EEO complaint).

Likewise, *Foxworth v. McDonough*, 712 F. Supp. 3d 1 (D.D.C. 2024), holds that federal-sector lawsuits may include claims alleged in the EEO complaint or claims that "reasonably relate to" and "grow out of such allegations." *Id* at 7. The point of the doctrine is notice and administrative opportunity to resolve the matter, not rigid textual identity between the EEO complaint and the civil pleading. "The exhaustion requirement is a practical and pragmatic one

that should not be invoked when it serves no practical purpose. *Wilson v. Peña,* 79 F.3d 154, 165 (D.C.Cir.1996). Further, it should not be construed to place a heavy technical burden on a plaintiff *Park, supra* at 907.

For a charge to be regarded as "reasonably related" to a filed charge it must at a minimum arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination. *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) citing *Wiley v. Glassman*, 511 F.3d 151, 160 (D.C. Cir. 2007). The point of the test is practical. If the later claim is one the agency naturally would have investigated in response to the original complaint, then the purposes of exhaustion have been fulfilled.

That framework fits this case. Here, Plaintiff's administrative allegations are:

(i) In March of 2023 without Plaintiff's consent or reason her supervisors changed her work accommodations by entering her DRAD portal (Dkt. 1, ¶32);

(ii) In March of 2023 her supervisors advised that she would no longer manage her principal contractor and was told not to speak with the contractor, who Plaintiff had trained. (Dkt. 1, ¶33). As such, this made Plaintiff's job extremely difficult because she had to pick up their duties and responsibilities. *Id*.

(iii) One of Plaintiff's contractors resigned, and her supervisors would not allow her to hire another one. (Dkt. 1, ¶34). As such, this made Plaintiff's job extremely difficult because she had to pick up their duties and responsibilities. *Id*.

(iv) Plaintiff's supervisors fired one of Plaintiff's contractors, and her supervisors would not allow her to hire another one. (Dkt. 1, ¶35). As such, this made Plaintiff's job extremely difficult because she had to pick up their duties and responsibilities. *Id*.

(v) In each year prior to 2023, Plaintiff's supervisors had met with Plaintiff and established performance goals for the year, yet this did not occur for 2023 and instead the supervisors met without Plaintiff to set such goals. (Dkt., ¶36). Further, Plaintiff's request to meet about such goals were refused. (Dkt. 1, ¶37).

(vi) In May of 2023, Plaintiff's supervisors required her to return to Washington D.C. without any medical protocol in place because due to her condition she required intravenous immunoglobin treatment every two weeks. (Dkt. 1, ¶38).

(vii) After Plaintiff filed her EEO complaint, her current flexible work schedule she had been working under was no longer approved. (Dkt. 1, ¶39).

(viii) In September of 2023, Defendants reassigned and changed Plaintiff's job duties and responsibilities as a condition of working from home. Such change was completely different to what Plaintiff was previously doing and done in an effort to set her up for failure. (Dkt. 1, ¶43).

(ix) With no other choice Plaintiff had to use FMLA leave. When she was set to return on January 8, 2024, Defendants treated Plaintiff's FMLA leave as unauthorized absences from work and placed her on absent without leave with intent to desert ("AWOL") status. (Dkt. 1, ¶44).

In applying the "reasonably related" test, the allegations in the filed charge must at a minimum arise from the administrative investigation that can reasonably be expected to follow the charge. *Payne, supra,* at 65. Here, the EEOC issued a final decision on March 18, 2025. (Dkt. 1, ¶49). In that decision, on one of Plaintiff's supervisors, Leah Bray, was interviewed and stated that she notified Plaintiff of her AWOL, switched it to leave without pay status ("LWOP") but continued to require Plaintiff to being in Washington D.C. (Hogg Decl., ¶3, Ex. A). To say that Plaintiff cannot bring claims in this Court because they were not raised in the EEOC process after November 17, 2023 flies in the face of the administration's own questioning. They inquired of Plaintiff's supervisors about facts that occurred in January of 2024. The administration investigated years of complaints that Plaintiff had made about how she was adversely treated based on her disability. When Defendants, then, decided to place her on AWOL status as a result of her taking FMLA leave, coupled with the history of complaints related to the exact same reasons that Plaintiff complained of, the issue was specifically exhausted, and no doubt meet the "reasonably related" test.

Furthermore, the EEOC's final decision specifically cited the claims that are now being alleged in this lawsuit, disparate treatment, discrimination based on disability, failure to accommodate, hostile work environment and reprisal aka retaliation. (Hogg Decl., Ex. A).

Plaintiff's complaints concerning reevaluation of accommodations, failure to maintain an effective accommodation, changes to work responsibilities, performance-goal irregularities, and hostile treatment would reasonably lead an investigator to examine the related acts Defendants now label "unexhausted." The conduct at issue in this lawsuit does not spring from some separate, unrelated employment disputes. It grows out of the same accommodation conflict, the same management reevaluation, the same alleged erosion of Plaintiff's role, and the same hostile and

retaliatory sequence placed before agency. Plaintiff's administrative allegations did not present a series of disconnected workplace slights; they described a coherent pattern of accommodation-related and retaliatory conduct. Once that pattern was before the agency, related manifestations of the same dispute fell within the reasonable scope of the investigation.

### C. <u>Plaintiff was not Advised of her Employment Termination Until Three Months after She was Terminated</u>

Defendants termination of Plaintiff's employment states removal on February 4, 2025. (Hogg Decl., ¶4 and Ex. B). Yet, Plaintiff did not receive the Notification of Personnel Action or learn of the termination until she attended her scheduled medical treatment in May of 2025 and was advised she no longer had insurance to cover such treatment. (Hogg Decl., ¶4). If there is any amendment to be made here, it is to add a retaliatory/wrongful discharge cause of action since Plaintiff was not properly advised of her termination.

Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Here, by not providing proper notice to Plaintiff about her termination it precluded her from amending her EEOC complaint to add retaliatory/wrongful discharge based on the same set of facts.

As a general proposition, it is well established that "the scope of an EEOC complaint should not be strictly interpreted." *Sanchez v. Standard Brands, Inc*., 431 F.2d 455, 465 (5th Cir. 1970) quoting *Baxter v. Savannah Sugar Refining Corp*., 46 F.R.D. 56, 59 (S.D. Ga. 1968). The scope of the judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Id.*

This case in analogous with *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981). Gupta, born in India and a naturalized citizen of the United States, brought a Title VII1 suit

alleging that his former employer discriminated against him on the basis of his national origin and religion. *Id* at 412. After Gupta instituted this lawsuit, he was notified that his teaching contract would not be renewed for the following year. *Id* at 413. Gupta argued that his nonrenewal was in retaliation for his filing charges with the EEOC; however, he never filed a third charge with the EEOC alleging retaliatory discharge. *Id.* The district court threw out the over the retaliatory-discharge claim because the filing of an administrative complaint is a jurisdictional prerequisite. *Id*.

The court of appeals revered holding that administrative exhaustion of retaliation claims is not required, because the district court has ancillary jurisdiction over such claims. *Id*, citing *Pettway v. American Cast Iron Pipe Co*., 411 F.2d 998 (1969). It is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge. *Id* at 414.

This is instructive here because (1) Plaintiff was not notified about her termination until after well after her EEOC complaint had been finalized and a decision made; and (2) Plaintiff's retaliatory/wrongful discharge grows out of the administrative charge properly before this Court.

### D. Defendants' "Post-November 17, 2023" Cut-Off is Overstated and Cannot Support Dismissal of Such Claims

Defendants argue that because the accepted allegations identify no issue after November 17, 2023, Plaintiff cannot litigate anything later. That reads the administrative record too narrowly.

Under *Foxworth*, *supra; Youssef v. Federal Bureau of Investigation,* 687 F.3d 397 (D.C. Cir. 2012) and *Carter v. Bridenstine,* No. 17-1752, 2020 WL 1536250, at *10 (D.D.C. Mar. 31, 2020), the proper inquiry is not whether the last date listed in the acceptance letter mechanically cuts off all later facts. It is whether the later allegations are part of the same reasonably expected investigation.

Here, the accepted allegations expressly include that no effective accommodation had been implemented since May 9, 2023 and that Plaintiff was subjected to a hostile work environment "characterized by but not limited to" the listed events. Those phrases naturally encompass continuing implementation failures and later manifestations of the same accommodation breakdown and retaliatory environment. It does not justify dismissal of the broader claims at the pleading stage.

The cases the Defendants rely on are not applicable to this matter.

In *Moore v. Dept. of State* 351 F.Supp.3d 76 (D.D.C. 2019), Moore had entered into a prior settlement agreement that the court found barred his hostile work environment claim. *Id* at 88. The court also found that the retaliation claim, as alleged in the complaint, was not alleged within the relevant filing period. *Id* at 94. Here, Plaintiff did not resolve any matters prior to this lawsuit and the allegations that give rise to all causes of action in this lawsuit were raised or are reasonably related to the EEOC complaint.

In *Vasser v. McDonald,* 228 F. Supp. 3d 1, 11 (D.D.C. 2016), Vasser simply did not contact the EEO counselor within the statutory 45-day time limit to make initiate such issues. *Id* at 12. Here, Plaintiff was timely in this regard. (Dkt. 1, ¶¶46 – 50).

The case of *Green v. Sessions* Civ. A. No. 17-1365, 2018 WL 2025299 does not apply here because in *Green* the plaintiff had been, or at least was aware, that he had been constructive discharged before his EEOC rights were extinguished. Whereas in this case, Plaintiff did not learn she was fired until a doctor's appointment in May 2025, approximately two months after the agencies final decision in this matter. (Hogg Decl., ¶4, Exs. A and B).

As such, the cases that Defendants rely on are not supportive related to the facts of this matter.

## E. <u>Hostile Work Environment Allegations Cannot be Artificially Atomized Into Isolated Pieces</u>

Defendants rely on *National Railroad Passenger Corp. v. Morgan* 536 U.S. 101 (2002) ("*Morgan*") for the proposition that discrete acts must be separately exhausted. But *Morgan* itself preserves the separate treatment of hostile-work-environment claims as a series of related acts that collectively constitute one unlawful employment practice.

> "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. [internal citation omitted] ('The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence'). The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id* at 115.

Defendants further argue that Plaintiff did not exhaust her alleged <u>third</u> adverse employment action (not allowing Plaintiff to hire another contractor after Defendants fired them), <u>fourth</u> adverse employment action (after Defendants fired another one of Plaintiff's contractors giving her all those duties), <u>fifth</u> adverse employment action (failing to meet her about performance goals after having do so for all the years prior), <u>sixth</u> adverse employment action (where supervisor Blum cancelled an unstated number of meetings Plaintiff last minute) and <u>eighth</u> adverse employment action (not allowing Plaintiff to work her prior flexible work schedule after she filed an EEO complaint), <u>ninth</u> adverse employment action (lying about Plaintiff not accepting an extension on her RWA), <u>tenth</u> adverse employment action (offering a conditional unreasonable requirement for accommodation) and <u>twelfth</u> adverse employment action (reassigning Plaintiff). (Dkt. 9, pp.17 – 18).

Yet, each of these issues were raised in the agency's final decision of March 18, 2025. (Hogg Decl., Ex. A). The "management removed contractor oversight from her job

responsibilities" encompasses both the third and fourth alleged adverse employment actions.[1] The "having management fail to establish performance goals for the 2023 performance evaluation period" encompasses the fifth alleged adverse employment action.[2] The "Complainant noted that she tried unsuccessfully to reach Ms. Blum", encompasses the sixth adverse employment action. The "Complainant claimed that because Ms. Blum and Ms. Bray ended her flexible work schedule she had been unable to gauge her leave balances" encompasses the eighth adverse employment action.[3] The "proposed a new flexible schedule for Complainant with accommodations for Complainant's treatments on Thursday and Friday, which Complainant approved" encompasses parts of the ninth adverse employment action as Plaintiff contends this "approval" was ripped away from her. (Dkt. 1, ¶40). The "Ms. Bray informed Complainant that she would no longer be permitted to have a flexible work schedule or to work remotely and that she was required to return to Washington, D.C. on July 31, 2023" encompasses her tenth adverse employment action.[4] The "she was tasked with many additional duties and responsibilities with severe deadlines" encompasses the twelfth adverse employment action.[5] (Hogg Decl., Ex. A).

The agency expressly accepted a hostile-work-environment claim tied not only to the listed events but also to reevaluation of accommodations and failure to establish proper performance goals. Several of the acts Defendants now try to sever—meeting disruptions, manipulated work commitments, duty stripping, shifting performance expectations, and accommodation reevaluation—fit naturally as component acts of the hostile and retaliatory environment Plaintiff

[1] The agency's final decision goes into detail about these issues further along in the report.
[2] The agency's final decision goes into detail about this issue further along in the report.
[3] The agency's final decision goes into detail about this issue further along in the report.
[4] The agency's final decision goes into detail about this issue further along in the report.
[5] The agency's final decision goes into detail about this issue further along in the report.

alleges. Even under Defendants' own framing, the agency accepted a hostile-environment allegation broad enough to investigate that course of conduct.

It's simply disingenuous for Defendants to argue that these adverse employment actions were not raised in the EEOC complaint and process when they are part of the agency's final decision.

### F. Defendants' Reliance on Notice-of-Acceptance Abandonment Cases is Incomplete and Distinguishable

Defendants' Motion leans on cases like *Bozgoz*, *Cheatham*, *McKeithan*, and *Green v. Small* for the notion that, where the plaintiff does not object to the agency's notice of acceptance, claims not listed are abandoned. (Dkt. 9, Sec. I(B)).

But those cases are distinguishable where, as here, the accepted allegations already encompass the core facts. As discussed herein above, the agency's final decision discusses the issues that Defendants argue were not exhausted. *Foxworth* narrows any rigid application of *Green* by recognizing that related claims within the reasonable scope of the investigation may proceed. "That said, this rule applies only when the complaint is ambiguous or unclear. When there is 'conflict between the acceptance letter and ... EEO complaint documents ... the complaint takes precedence.'" *Foxworth v. McDonough*, 712 F. Supp. 3d 1, 9 (D.D.C. 2024).

For all these reasons, Defendants' argument that Plaintiff failed to exhaust administrative remedies should be rejected. Plaintiff properly invoked and pursued the administrative process, and her current claims were either specifically addressed in the EEOC process or are reasonably related to, and naturally grow out of the allegations she presented to the agency. The agency had actual notice of the broader accommodation and retaliation dispute and a fair opportunity to investigate and address it internally. Under *Hollingsworth v. Duff*, 444 F. Supp. 2d 61 (D.D.C.

2006), *Foxworth*, *Youssef* and *Carter*, that is sufficient. Defendants' motion to dismiss on exhaustion grounds should therefore be denied.

## V. PLAINTIFF PLAUSIBLY STATES CLAIMS ON THE MERITS

### A. Plaintiff States a Plausible Failure to Accommodate Claim (Count I)

Defendants next argue that Plaintiff's failure-to-accommodate claim fails because the State Department offered her a "reasonable accommodation"—a job at another office that purportedly would have allowed her to continue working remotely—and Plaintiff declined that offer. According to Defendants, that refusal defeats the claim as a matter of law. (Dkt, 9, p. 19).

#### 1. *Plaintiff Plausibly Alleges all Required Elements*

A failure-to-accommodate claim requires allegations of disability, employer knowledge, qualification, and refusal to provide reasonable accommodation. *Barth v. Gelb*, 2 F.3d 1180 (D.C. Cir. 1993). Plaintiff meets and has alleged the standard.

Plaintiff alleges a disabling AHI/TBI condition and related medical conditions requiring extensive continuing care. (Dkt. 1, ¶30). She alleges that Defendants knew of those conditions because it had long accommodated them. *Id*. She alleges she successfully performed the role for years with telework and scheduling flexibility. (Dkt. 1, ¶31). And she alleges that, beginning in March of 2023, management without Plaintiff's consent reviewed her medical records to reevaluate her already approved accommodations and allowed her remote-work arrangement to expire without implementing an effective or reasonable substitute. (Dkt. 2, ¶¶32, 38 – 43).

### 2. *Defendants Did Not Engage in Good Faith in the Interactive Process and their Proposed Accommodation Was Not Reasonable*

A reasonable accommodation must enable the employee to perform the essential functions of her position without fundamentally altering the nature of the employment relationship. *Southeastern. Community College. v. Davis*, 442 U.S. 397, 410 (1979). Reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship. *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1301 (D.C. Cir. 1998).

Here, Plaintiff alleges that the State Department's proposed "potential detail opportunity" would have removed her from the position and professional responsibilities she had built within her office, replaced them with different duties in a different office and required her to move to Washington D.C. (Dkt. 1, ¶¶38, 43). In practical terms, the proposal would have required Plaintiff to relinquish her established role, expertise, location of work and career trajectory in order to maintain the remote-work structure necessary for her medical treatment. A structure that she had been doing successfully for years prior. Reassignment is an option to be considered only after other efforts at accommodation have failed. *Id.* Defendants "offer" was actually taking away Plaintiff's current accommodation that was in place from 2021. (Dkt. 1, ¶¶42, 43).

Employers must engage in a good-faith interactive process to identify an effective accommodation that allows the employee to perform the essential functions of her job. *Taylor v. Phoenixville Sch. Dist*., 184 F.3d 296, 312 (3d Cir. 1999). Courts evaluating accommodation proposals consider not only whether the proposal technically permits the employee to work, but also whether the employer pursued the accommodation process in good faith. *Id.* A party that obstructs or delays the interactive process is not acting in good faith. *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir.1996). A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. *Id.* In essence, courts should

attempt to isolate the cause of the breakdown and then assign responsibility. *Taylor, supra* at 312 citing *Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1285 (7th Cir.1996).

In *Floyd v. Lee*, 968 F.Supp.2d 308 (D.D.C. 2013), the court articulated four elements that an employee may rely upon to demonstrate that an employer failed to participate in the interactive process: (1) the employer knew of the employee's disability; (2) the employee requested accommodations; (3) the employer failed to make good-faith efforts to assist the employee in obtaining accommodation; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Id* at 327. This makes clear that the inquiry centers on the employer's efforts to engage constructively in the process of identifying an accommodation.

Here, Plaintiff alleges that all Defendants needed to do was keep her current accommodations from 2021 in place and not require her to work from Washington D.C. without any AHI medical treatment in place. Instead, they initiated a reevaluation into her medical records, failed to renew her RWA, required her to move to Washington D.C. and treated her approved FMLA leave as AWOL status.[6]

In *Pantazes v. Jackson*, 366 F. Supp. 2d 57, 70 (D.D.C. 2005), the court held that an employer must engage in the interactive process in good faith and that unreasonable delays may evidence a failure to accommodate. *Pantazes* emphasizes that the inquiry is not simply whether the employer eventually proposed something, but whether it engaged meaningfully in identifying a workable accommodation. Here, Defendants' unrequested reevaluation into her medical records, a pattern of refusing to engage meaningfully with Plaintiff before offering the "potential detail opportunity" constitutes bad faith, or at the very least defeats this Motion to Dismiss.

---

[6] Defendants, later, fired Plaintiff relying on this exact reason, because she was in AWOL status. This also points to that the termination grew out of the core facts the EEOC investigated.

### 3. *Defendants' "Classified Settings" Rationale is Pretextual*

Defendants also contend that Plaintiff is not a "qualified individual" under the Rehabilitation Act because, in their telling, she could not perform the essential function of working in classified settings from Arizona. That argument is contrary to the allegations of the Complaint.

At the pleading stage, Plaintiff need not prove that she could perform every disputed function exactly as Defendants now characterize it. She need only allege facts plausibly showing that she was otherwise qualified to perform the essential functions of her position with or without reasonable accommodation. She has done so.

Plaintiff alleges that she successfully performed her position for an extended period while working remotely under approved accommodations. (Dkt.1, ¶5). She further alleges that Defendants' claim that in-person classified work in Washington, D.C. was indispensable to her role was "false," because her position did not require Top Secret security clearance and did not require any work to be done in a classified setting. (Dkt. 1, ¶16(b)). And if classified work was ever required (which it had not been) there were three "Classified Drop" USG facilities in Phoenix area. *Id.* Those allegations directly undermine Defendants' attempt to recast physical presence in Washington D.C. as an unquestionable essential function.

The timing of Defendants sudden insistence that classified work was essential – coming only after Plaintiff's accommodation requests – suggests this requirement was pretextual rather than genuinely essential to her position.

### 4. *At Minimum, Whether the Proposed "Potential Detail Opportunity" Was a Reasonable Accommodation Presents a Fact Question that Cannot Be Resolved on a Motion to Dismiss*

Even if Defendants were correct that a reassignment or "potential detail opportunity" could constitute a reasonable accommodation, that conclusion cannot be reached on the pleadings here.

Determining whether a proposed accommodation is reasonable requires consideration of numerous factual issues, including the nature of the employee's position, the employee's professional responsibilities, the impact of the proposed reassignment on the employee's career trajectory, and the employer's conduct during the interactive process.

The authorities discussed above confirm that disputes over the adequacy of the interactive process and the reasonableness of proposed accommodations typically present fact-intensive questions. Where the employee plausibly alleges that the employer failed to participate in the process in good faith and offered an accommodation that fundamentally altered the employee's position, courts do not resolve those issues at the pleading stage. *Morris v. Asante Health Systems*, 2023 WL 3766615.

Plaintiff has alleged precisely that scenario. She alleges that the Defendants undermined the accommodations that had allowed her to perform her job successfully and then offered a detail that would have forced her to abandon the professional responsibilities and move to Washington D.C. without an AHI medical protocol in place. Under *Pantazes* and *Floyd* those allegations are more than sufficient to state a plausible claim for failure to accommodate. As such, Defendants' Motion to Dismiss Count I should be denied.

### B. <u>Plaintiff Plausibly Pleads Retaliation Claims (Count II)</u>

Defendants' attempt to dismiss Plaintiff's retaliation claim rests on an improperly rigid reading of Rule 8, a selective characterization of the alleged protected activity, an artificially narrow view of materially adverse actions, and an unduly heightened causation standard. When the Complaint is read as a whole – as it must be at this stage – Plaintiff more than plausibly alleges retaliation under the Rehabilitation Act.

**1. *Plaintiff's Retaliation Claim Satisfies Rule 8 and Provides Ample Notice***

Defendants' Rule 8 argument fails at the outset because it applies a level of specificity far beyond what is required at the pleading stage.

Rule 8 requires only "a short and plain statement" giving fair notice of the claim and its grounds, not a granular mapping of each protected activity to each adverse action. Courts consistently reject attempts to impose a heightened pleading burden. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).

Plaintiff's allegations set forth a detailed and coherent factual narrative that easily satisfies Rule 8. She alleges that she repeatedly requested and relied upon medically necessary accommodations, objected to the agency's reevaluation and erosion of those accommodations, and ultimately engaged in formal EEO activity. (Dkt. 1, ¶¶32 – 50). Following this protected activity, she describes a sequence of escalating actions by management, including the removal of core responsibilities, interference with her ability to establish and meet performance goals, revocation of long-standing telework, pressure to abandon conditions necessary for her continued employment, issuance of a negative performance review, and the designation of her leave as AWOL, when she was on approved FMLA. *Id.*

In *Ames v. Johnson* 121 F. Supp. 3d 126, 130 (D.D.C. 2015), the court made clear that a plaintiff need not plead a prima facie case at the motion-to-dismiss stage and that Rule 8 is satisfied so long as the complaint provides fair notice of the claim and the grounds upon which it rests. "As long as the 'allegations give [the defendant] fair notice of what petitioner's claims are and the grounds upon which they rest,' the notice pleading requirement of Rule 8(a) is met." *Id.*

Similarly, in *Zano v. McDonough*, No. CV 22-2748 (RBW), 2024 WL 2699976 (D.D.C. May 24, 2024), at *8 (D.D.C. May 24, 2024), the court denied dismissal where the plaintiff alleged

protected activity, adverse actions, and a causal relationship, even though the defendant argued the allegations lacked specificity. "Recognizing the 'relatively low hurdle' plaintiffs face at the motion to dismiss stage," the Court held that "because the plaintiff alleges that she engaged in statutorily protected activity, suffered materially adverse actions, and that these adverse actions occurred shortly thereafter because of her protected activity, the Court finds that the plaintiff has adequately pleaded a retaliation claim under Title VII. *Id.*

Furthermore, in *Howard v. Gutierrez,* 237 F.R.D. 310, 313 (D.D.C. 2006), the court explained that a detailed fact section "more than meets the plain statement requirements of Rule 8(a), and does clearly state a claim upon which relief can be granted. Any further details that the defendant requires to determine specifics of plaintiff's allegations and whether or not they have been administratively exhausted are properly the subject of discovery."

Read together, these allegations in Plaintiff's Complaint describe not isolated or trivial workplace grievances, but a sustained pattern of conduct that plausibly reflects retaliatory treatment in response to Plaintiff's protected activity. This narrative provides far more than sufficient notice of the nature of Plaintiff's retaliation claim and the grounds upon which it rests, and it allows Defendants to understand the theory of liability being asserted. Rule 8 requires no more at this stage.

**2. *Plaintiff Adequately Alleges Protected Activity***

Defendants next argue that Plaintiff's protected activity is "vague." That argument misstates both the law and the Complaint.

Requesting a reasonable accommodation is protected activity. Courts have repeatedly recognized that employees engage in protected activity when they request accommodations or oppose failures to accommodate. See, e.g., *Congress v. District of Columbia*, 514 F. Supp. 3d 1

(D.D.C. 2020) ("[T]he act of requesting in good faith a reasonable accommodation is a protected activity" under the Rehabilitation Act.). "Complaining about a failure to receive an accommodation is [also] protected activity for purposes of a [Rehabilitation Act] retaliation claim." *Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014).

Likewise, complaints to supervisors about discrimination or failure to accommodate may constitute protected activity so long as they convey opposition to unlawful conduct. *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006).

Plaintiff's Complaint alleges that she engaged in protected activity by requesting reasonable accommodations, objecting to the agency's failure to accommodate or implement new conditions to her employment, and filing an EEO complaint. It further identifies a series of allegedly retaliatory actions, including the stripping of duties, interference with performance goals, revocation of flexible scheduling, threats concerning remote work, negative performance review, and AWOL-related action. That is enough.

### 3. *Plaintiff Plausibly Alleges Materially Adverse Actions*

Defendants' argument that none of Plaintiff's alleged actions are materially adverse is particularly flawed because it improperly isolates each act and minimizes its impact, contrary to governing law.

The adverse actions alleged by Plaintiff, when viewed collectively and in context, would certainly dissuade a reasonable employee from engaging in protected activity. The progressive stripping of her job responsibilities, increased workload without support, unilateral changes to performance goals, and the eventual termination of long-standing accommodations fundamentally altered her working conditions. These actions adversely effected Plaintiff's employment and environment specifically targeting her disability accommodations after she engaged in protected

activity.

Under the anti-retaliation standard, the question is whether the challenged action might dissuade a reasonable worker from making or supporting a charge of discrimination. "A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

The Supreme Court in *Burlington* emphasized that context matters in determining whether actions are materially adverse, and the pattern of actions here clearly meets that standard. "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. 'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" *Id,* at 69.

Here, Plaintiff alleges not petty slights, but a progressive dismantling of her work structure.

**a) The Alleged Conduct Must be Viewed Collectively**

Retaliation claims must be evaluated based on the totality of circumstances, not a piecemeal analysis. *Paschal v. D.C.,* 65 F. Supp. 3d 172, 176 (D.D.C. 2014).

When read as a whole, Plaintiff alleges a series of escalating and interrelated actions. Plaintiff even numbers the different adverse employment actions to have taken place against Plaintiff. (Dkt. 1, ¶¶32 – 44). Taken together, the pattern reflects a sustained course of conduct that cannot reasonably be characterized as trivial, but instead plausibly constitutes materially adverse action under governing law.

**b) Increased Workload and Duty Changes are Not Trivial**

Defendants characterize increased workload and duty changes as insignificant. But where such changes are tied to retaliatory conduct or materially alter an employee's role, they may be actionable. Courts have recognized that reductions in responsibilities or meaningful alterations to job duties may constitute materially adverse actions. *Zano v. McDonough,* 2024 WL 2699976, at *8 (D.D.C. May 24, 2024)("Examples [of materially adverse actions] include a 'reduction in grade, pay, or benefits,' an 'extraordinary reduction in responsibilities that persisted for years,' and a transfer that diminishes the employee's responsibilities.'").

Here, Plaintiff does not merely allege "more work." She alleges removal of contractor oversight and restructuring of her role in a way that undermined her professional responsibilities and performance trajectory. That is qualitatively different from the "trivial" workload changes that Defendants cite.

**c) Denial and Revocation of Accommodation Can Be Materially Adverse in Context**

Defendants argue that denial of accommodation cannot support retaliation. That is an oversimplification. While courts have cautioned that denial of accommodation alone cannot automatically establish retaliation, they also recognize that conduct surrounding accommodation – particularly where it involves worsening conditions or coercive pressure – can be materially adverse.

As to Defendants suspension of Plaintiff's telework, in *Saunders v. Mills*, 172 F. Supp. 3d 74 (D.D.C. 2016), the court recognized that suspension of an existing telework arrangement may be materially adverse. The *Saunders* court stated, "these cases, however, do not support SBA's action here. They involved the denial of an initial telework request, as opposed to the suspension of an existing telework arrangement. The suspension of an existing privilege or condition of

employment (i.e., telework arrangement) could dissuade a reasonable worker from filing or supporting a charge of discrimination against the employer because the worker could feel that the charge will result in further adverse actions and retaliation." 172 F. Supp. 3d 74, 101 (D.D.C. 2016).

Furthermore, *Robinson v. Ergo Solutions, LLC,* 257 F. Supp. 3d 47, 52 (D.D.C. 2017) supports the proposition that termination of telework may become materially adverse when telework is particularly necessary for the employee. "A care-taking obligation outside of work is merely one way of assessing whether a change in her schedule is sufficiently adverse. It is not the only way to show that terminating her telework arrangement – after allowing her to telecommute for 15 years – was a sufficiently adverse action that it 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.*

This is precisely the case here. Plaintiff alleges that telework were long-standing, effective accommodations essential to her medical condition and treatment and continued employment, and that Defendants destabilized and ultimately revoked them. This was not a casual preference for working from home. Remote work was necessary given Plaintiff's documented medical condition and treatment needs. The revocation or effective denial of that arrangement therefore altered her working conditions in a substantial and highly personal way.

#### d) The Proposed "Potential Detail Opportunity" Can Itself be Materially Adverse

Defendants argue that offering a different position cannot be adverse because it was never implemented. But courts recognize that coercive or forced choices may be materially adverse.

In *Sanders v. Kerry*, 180 F. Supp. 3d 35, 44 (D.D.C. 2016), the court explained that retaliation encompasses conduct that would deter a reasonable employee, even outside traditional employment actions. "[A] materially adverse action may extend to harms that are not workplace-

related or employment-related so long as a reasonable employee would have found the challenged action materially adverse." *Id.*

The offer to change Plaintiff's job duties was materially adverse because it presented her with an impermissible choice between losing her accommodation or accepting diminished job responsibilities and moving to Washington D.C. Unlike unconsummated disciplinary actions, this offer carried immediate consequences by forcing her to choose between her health needs and her career trajectory. The coercive nature of the offer itself constitutes an adverse action regardless of whether the transfer occurred, as it would dissuade a reasonable employee from pursuing accommodation requests.

Plaintiff was forced to choose between maintaining her accommodation and abandoning her established role. That is not a benign offer. It was a coercive dilemma that could dissuade a reasonable employee from engaging in protected activity.

**e) AWOL Designation is Materially Adverse**

Defendants' argument regarding AWOL is directly contradicted by case law.

Being intentionally and incorrectly designated as AWOL rather than on approved FMLA leave is materially adverse as it directly impacted Plaintiff's employment record, pay status, benefits eligibility, and ultimately led to her termination. This mischaracterization of her absence creates a permanent negative record in her personnel file that could affect future employment opportunities and performance evaluations, meeting the standard for a materially adverse action under *Burlington Northern*, *supra.*

Courts have repeatedly held that AWOL designations may constitute materially adverse actions because they affect pay, benefits, disciplinary records, and future employment prospects. *Greer v. Paulson,* 505 F.3d 1306, 1317 (D.C. Cir. 2007) ("Greer's employer classified her

placement on AWOL as an adverse action, which could be the basis of further sanctions, as occurred here.”).

In *Zano v. McDonough,* 2024 WL 2699976, at *8 (D.D.C. May 24, 2024) the Court stated, “when the plaintiff allegedly received ‘wrongful [absent without leave designations],’ and her sick leave time was allegedly converted from FMLA-[leave of absence] to FMLA-[leave without pay,] she experienced reductions in her benefits and income. Such reductions could ‘dissuade a reasonable worker from making or supporting a charge of discrimination[,]’ *Paschal*, 65 F. Supp. 3d at 177, and thus qualify as adverse actions at this stage of the proceedings.” *Zano, supra.*

Similarly, in *Chien v. Sullivan,* 313 F. Supp. 3d 1, 16 (D.D.C. 2018), the court held that a Department of State employee’s allegations regarding leave issues, including being placed on AWOL status after retroactive changes to work hours and authorization of pay deductions for pre-approved sick leave, plausibly could have dissuaded a reasonable worker from making a discrimination charge. “It is at least plausible that these actions, either individually or collectively, could have dissuaded a reasonable worker from making a charge of discrimination.” *Id.*

It is clear that Plaintiff’s AWOL allegation is a material adverse employment action.

**f) Plaintiff’s Retaliation Claim is Not Duplicative Merely Because Some Facts Overlap Count I**

Defendants next argue that Plaintiff’s retaliation claim is duplicative because it is based on accommodation-related conduct.

Courts have rejected retaliation claims that merely relabel the denial of accommodation itself as retaliation. But those same authorities recognize that a retaliation claim remains viable where the plaintiff alleges distinct adverse actions taken because she requested accommodation or complained about its denial. *See, e.g., Buie v. Berrien*, 85 F. Supp. 3d 161 (D.D.C. 2015).

That is what Plaintiff alleges here.

Plaintiff does not rely solely on denial of accommodation. She alleges that after requesting accommodation and pursuing EEO relief, at least 13 different retaliatory events took place. (Dkt. 1, ¶¶32 – 44). These are distinct retaliatory acts. The retaliation claim therefore is not duplicative.

**4. *Plaintiff Alleges Causation***

Finally, Defendants argue that Plaintiff fails to allege causation. This argument improperly applies a summary judgment standard at the pleading stage. At this stage, Plaintiff need only plausibly allege that retaliation occurred because of protected activity. *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 90–91 (2015).

At the motion to dismiss stage, the court does not conduct a full causation analysis in determining whether plaintiff has stated a claim. *Harrington v. Pompeo*, No. 18-cv-1056 (TSC), 2020 WL 5816217 (D.D.C. Sept. 30, 2020) citing *Badwal v. Bd. of Trustees of the Univ. of D.C.*, 139 F. Supp. 3d 295, 311 (D.D.C. 2015). "Courts have consistently recognized the ease with which a plaintiff claiming employment discrimination can survive …a motion to dismiss." *Id.*

Importantly, the *Harrington* court stated that "[a] plaintiff's allegation that the employer's proffered reasons for the adverse employment actions [are] false may support an inference of discrimination sufficient to survive a motion to dismiss." *Id* at *4.

In *Wallace v. Wright,* 2025 WL 3042025, at *4 (D.D.C. Oct. 31, 2025), the court emphasized that at the motion-to-dismiss stage the issue is not whether the plaintiff will ultimately prove causation, but whether she is entitled to offer evidence supporting the claim. A complaint plausibly alleging retaliation because of protected activity is enough. *Id.* "While Ms. Wallace may not ultimately prevail on her retaliation claim – indeed, her allegations of retaliation are not robust – she has sufficiently alleged that she engaged in protected activity and that DOE terminated her as a result. This is enough to survive dismissal." *Id.*

Here, Plaintiff alleges a pattern of conduct of at least 13 things that Defendants did to target the accommodations she needed because of her disability after Plaintiff complained about Defendants reevaluating her condition. Viewed together, those allegations show causation.

Furthermore, causation should be evaluated based on the most recent protected activities, not just initial accommodation requests. Plaintiff engaged in ongoing protected activity through her continuous requests to maintain accommodations and her EEO activity. The adverse actions began shortly after she opposed the March 2023 re-evaluation of her accommodations, showing close temporal proximity. "In many cases, a temporal relationship may be enough for a court to infer causation." *Cochise v. Salazar*, 601 F. Supp. 2d 196, 201–202 (D.D.C. 2009).

### C. Plaintiff Plausibly Pleads a Disability Discrimination Claim (Count III)

Defendants' argument that Plaintiff fails to state a disability discrimination claim rests on an improperly heightened pleading standard and a mischaracterization of both the Complaint and governing law. At the motion to dismiss stage, Plaintiff is not required to prove discriminatory intent, identify comparator employees with evidentiary precision, or produce direct evidence of bias. She must only allege facts that plausibly support an inference that she suffered adverse action because of her disability. She has done so.

#### 1. *Plaintiff Is Not Required to Plead Direct Evidence of Discriminatory Intent*

Defendants' primary argument is that Plaintiff fails to allege discriminatory comments or direct evidence of bias. This argument misstates the pleading standard because what Defendants argue is not required.

Direct evidence of discriminatory intent is not required at the pleading stage. In *Harrington v. Pompeo, supra,* the court rejected the argument that a complaint must include explicit discriminatory statements to survive dismissal and explained that the inquiry at the motion to

dismiss stage is not whether the plaintiff can prove discriminatory motive, but whether the factual allegations permit a reasonable inference of discrimination. *Id*, 2020 WL 5816217, at *4 (D.D.C. Sept. 30, 2020). The court further recognized that allegations undermining the employer's stated rationale, such as claims that those reasons are false or pretextual, can support such an inference. *Id.*

Similarly, *Montgomery v. McDonough,* No. CV 22-1715 (RC), 2024 WL 1344443, at *11 (D.D.C. Mar. 29, 2024) emphasized that the burden at the pleading stage is "not onerous" and that courts must consider the allegations holistically, rather than in isolation. The court in *Montgomery* explained that a pattern of conduct implicating the plaintiff's disability, particularly where it reflects changes in treatment following accommodation-related issues, can plausibly support an inference of discrimination even in the absence of direct evidence. *Id.*

Those principles apply squarely here. Plaintiff does not rely on bare legal conclusions. She alleges a concrete sequence of events: after years of successful performance with accommodation, management secretly reevaluated those accommodations, stripped her of core responsibilities, interfered with her performance framework, failed to maintain an effective accommodation, and imposed adverse consequences including a negative evaluation and AWOL designation. Plaintiff also alleges that Defendants' stated justifications for these actions were false. Under *Harrington* and *Montgomery*, those allegations are more than sufficient to support a plausible inference of discriminatory intent.

### 2. *Plaintiff Is Not Required to Plead Detailed Comparator Evidence*

Defendants next argue that Plaintiff's claim fails because she has not pleaded specific comparator employees. This argument is inconsistent with governing law.

On a motion to dismiss, a plaintiff need not plead every element of a prima facie case and need not plead specifics about comparators. *Harrington, supra,* at *4; *Montgomery, supra,* at 183–184 (finding plaintiff adequately pleaded a discrimination claim without identifying a comparator who received more favorable treatment).

Moreover, *Sandler v. Blinken* 2022 WL 4547557, at *7 (D.D.C. Sept. 29, 2022) outlines the elements of a Rehabilitation Act discrimination claim, which are disability, qualification, and adverse action because of the disability. The court does not impose a requirement that plaintiffs plead comparator evidence with specificity at the outset.

### 3. *Plaintiff's Allegations Support a Plausible Inference of Discrimination*

When viewed as a whole, the Complaint alleges that Plaintiff was subjected to adverse treatment because of her disability.

Plaintiff alleges that she had a known disability requiring ongoing accommodation, that she successfully performed her role with those accommodations for years, and that management then began reevaluating and dismantling those accommodations. She further alleges that this reevaluation was accompanied by adverse changes to her role, including removal of responsibilities, disruption of performance evaluation processes, and eventual imposition of negative consequences such as a poor performance review and AWOL designation. (Dkt. 1, ¶¶32 – 44). Plaintiff alleges that Defendants' proffered justifications—such as their reliance on job requirements or workplace constraints—were false. That allegation, combined with the sequence of actions targeting her accommodations and role, plausibly supports the inference that disability was a motivating factor in the challenged conduct.

### 4. *Defendants' Reliance on "Awareness Alone" Cases Are Misplaced*

Defendants argue that mere awareness of Plaintiff's disability is insufficient to establish discrimination.

Plaintiff does not rely on awareness alone. She alleges that, after years of accommodating her disability, the agency took a series of adverse actions directly tied to those accommodations and her ability to maintain them. The claim is not that Defendants simply knew of her disability; it is that they acted against her by attacking the accommodation for her disability.

That distinction is critical. Where a plaintiff alleges that adverse actions are intertwined with the handling, withdrawal, or undermining of disability-related accommodations, courts have recognized that such allegations may support an inference of discrimination. *See generally Sandler v. Blinken*, 2022 WL 4547557, at *7 (D.D.C. Sept. 29, 2022) (recognizing that discrimination claims may proceed where adverse actions are linked to disability and accommodation issues).

What makes this argument quite disingenuous is that Defendants acknowledged her disability in 2021 by providing an accommodation after she was formally diagnosed with Havana Syndrome/AHI. So, to argue now that that awareness alone is not enough is nonsensical.

## VI. DEFENDANTS' DAMAGES ARGUMENT DOES NOT WARRANT DISMISSAL OF THE CLAIMS

Finally, Defendants argue that Plaintiff's claims for punitive and emotional distress damages should be dismissed.

While traditional punitive damages may be barred by 42 U.S.C. § 1981a(b)(1), Plaintiff compensatory damages for her emotional harm as part of her remedy. Compensatory damages for emotional distress are distinct from punitive damages and should be available under the Rehabilitation Act's remedial scheme, which incorporates Title VII remedies. The Supreme Court's decision in *Cummings v. Premier Rehab Keller, P.L.L.C.,* 596 U.S. 212, 229-230 (2022)

addressed Spending Clause programs under Section 504, not Section 501 employment claims against federal agencies. Congress has broad power under the Spending Clause of the Constitution to set the terms on which it disburses federal funds. *Id* at 216.

In *Santos v. Collins*, No. CV 24-1759, 2025 WL 1905596, at *12 (D.D.C. July 10, 2025), the court recognized a distinction between punitive and compensatory damages under Section 501 and acknowledged waiver of immunity for compensatory damages under Section 501 while rejecting punitive damages

## VII. CONCLUSION

For all of these reasons, Defendant's Motion to Dismiss should be denied in its entirety. Plaintiff has exhausted her claims and has more than adequately alleged viable claims under the governing standards, and Defendant's arguments improperly attempt to impose heightened pleading requirements and misapplied law. At this stage, the Court must accept Plaintiff's well-pleaded allegations as true and under that standard, each of Plaintiff's claims is plausible on its face.

Plaintiff, however, does request leave to add a retaliatory/wrongful discharge count due to Defendants' due process violation and delay in notifying Plaintiff of her termination.

Date: April 13, 2026

Respectfully submitted,

______________________________
Evan Selik (SBN)
McCATHERN LLP
233 Wilshire Blvd., Suite 720
Santa Monica, California 90401
(213) 225-6150 | Fax (213) 225-6151
eselik@mccathernlaw.com

Attorney for Plaintiff, Carey Hogg