**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CAREY HOGG, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-1925 (RC) |
| | : | | |
| v. | : | Re Document No.: | 9 |
| | : | | |
| DEPARTMENT OF STATE, *et al.* | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Carey Hogg alleges that she suffers from a condition sometimes referred to as Havanna Syndrome. She says this disability and the accompanying medical care require her to work remotely and on a flexible schedule. For years, she alleges, these accommodations allowed her to perform her job at the United States State Department without incident. But, in March 2023, she charges that her employer abruptly reversed course—revoking her accommodation and taking other actions that she claims targeted her disability or were retaliatory. She now sues under the Rehabilitation Act, 29 U.S.C. § 791, for various forms of disability discrimination.

Defendants the United States Department of State and Secretary of State Marco A. Rubio, in his official capacity, move to dismiss. The focus of their motion is that (1) Ms. Hogg failed to raise many of her grievances with the agency before she sued in federal court and (2) Ms. Hogg's allegations do not state plausible discrimination claims.

The Court grants Defendants' motion only in part. It concludes that Ms. Hogg adequately raised some, but not all, her claims with the agency first. And the Court finds that Ms. Hogg has stated a plausible claim that Defendants denied her a reasonable accommodation.

But the Court also finds that Ms. Hogg has failed to state a claim for her other discrimination theories, retaliation and disparate treatment.

## II. BACKGROUND

### A. Factual Background

The Court draws the following factual background from the allegations in the complaint, which the Court must assume are true for purposes of this motion. *See Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 617 (D.C. Cir. 2023). Ms. Hogg worked as a Foreign Affairs Officer within the United States Department of State. Compl. ¶ 2. She alleges she served there for ten years, making her "the longest continuously serving employee" in her office. *Id.* During that tenure, she "was promoted three times, received two exemplary annual performance ratings, and won awards for her continued excellent performance each year." *Id.*

Although she would not be diagnosed for many years, in August 2016 Ms. Hogg alleges she began suffering from an "Anomalous Health Incident," which some have referred to as "Havana Syndrome" or even an "immaculate concussion." *Id.* ¶ 3. She alleges that, according to a 2020 government report, the condition is "most likely due to pulse[d] microwave radio frequency radiation," and it "has plagued hundreds of American officials stationed abroad in China" and "Cuba" as well as officers stationed domestically. *Id.* Ms. Hogg sustained the injury while working in the District of Columbia. *Id.* It caused her to experience "headaches, sleeplessness, lightheadedness, nosebleeds, and memory loss." *Id.*

Despite her injury, Ms. Hogg "continued to work full-time, bringing her laptop to countless emergency rooms and hospital stays to ensure her continued exemplary job performance." *Id.* ¶ 4. For her efforts, she "received her first promotion" along the General Schedule pay scale. *Id.* She alleges that "[a]s a result" of her performance, in January 2020

"senior leadership established reasonable accommodations for [her] that allowed her to telework 'any day, and at any time.'" *Id.*

In May 2021, Ms. Hogg received her diagnosis for an Anomalous Health Incident. *Id.* ¶ 5. She "immediately reported this diagnosis to a supervisor" and "requested accommodation for her disability from the State Department's Disability and Reasonable Accommodation Division." *Id.* She was then promoted again. *Id.* Around this time, "senior leadership established a Remote Work Agreement . . . that allowed Ms. Hogg to continue working full-time while receiving medical care at the Mayo Clinic in Arizona." *Id.* Under this accommodation, "[s]he continued to receive exemplary annual performance ratings in both the years 2021 and 2022." *Id.*

Ms. Hogg alleges, however, that this arrangement began to deteriorate in March 2023. *See id.* On the first of the month, Orna Blum (presumably one of Ms. Hogg's supervisors) alongside a State Department "Resources Division Chief . . . initiated a re-evaluation of Ms. Hogg's current reasonable accommodations." *Id.* ¶ 6. After this point, Ms. Hogg alleges that her employer took fourteen adverse employment actions against her related to her disability. *See id.* ¶¶ 29–45.

The first four adverse-employment actions concern events related to the contractors Ms. Hogg supervised. *See id.* ¶¶ 33–35. The day after Ms. Blum initiated the reevaluation, Ms. Hogg alleges that "Ms. Blum informed Ms. Hogg that Ms. Hogg would no longer manage her principal contractor." *Id.* ¶ 33. This was the first alleged adverse employment action. *Id.* The second alleged adverse employment action followed quickly on its heels. Ms. Hogg alleges she was "specifically advised that she could no longer communicate with" this contractor. *Id.* ¶¶ 8, 33. After that, two other contractors left or were terminated, and their duties were assigned

to Ms. Hogg, which she alleges constituted the third and fourth adverse actions (one for each contractor). *Id.* ¶¶ 34–35. The next month, on April 3, Ms. Hogg filed a complaint with the Equal Employment Opportunity Commission. *Id.* ¶ 46.

A week later, Ms. Hogg suffered what she characterizes as the fifth adverse employment action. Ms. Blum emailed Ms. Hogg about "Work Commitment Ideas," which appear to have been a set of performance objectives. *Id.* ¶¶ 9, 36. Ms. Hogg alleges that "[t]his was the first time that [she] had not been involved in the process" of setting her performance goals "as it was supposed to be interactive." *Id.* ¶ 9. And Ms. Blum repeatedly canceled meetings with Ms. Hogg where Ms. Hogg hoped to discuss the plan. *Id.* These cancelations, as Ms. Hogg sees them, constitute the sixth adverse employment action. *Id.* ¶ 37.

"This conduct occurred up and until Ms. Hogg filed an informal Equal Employment Opportunity . . . complaint." *Id.* ¶ 9. That complaint "requested that [Ms. Hogg] be allowed to maintain the reasonable accommodation that she had due to her condition." *Id.* ¶ 10.[1]

On May 9, 2023, Deputy Coordinator Leah Bray advised Ms. Hogg that after her remote-work agreement expired at the end of the month, Ms. Hogg "would have to return to Washington, D.C. or go on unpaid Family Medical Leave . . . or Leave Without Pay." *Id.* ¶¶ 10, 12. At the time, "Ms. Hogg was receiving intravenous immunoglobin . . . treatment every two weeks," which "her supervisors were aware" of. *Id.* ¶ 38. Her employer also "no longer

[1] Presumably, this informal complaint, filed at some point after April 10, 2023, was different from the complaint Ms. Hogg filed on April 3, 2023. *Compare id.* ¶ 9, *with id.* ¶ 46. Defendants point out that Ms. Hogg did not actually file a complaint on April 3, 2023, but instead merely initiated an informal counseling process. *See* Defs.' Mot. at 7 n.3. For present purposes, however, the Court treats Ms. Hogg's allegation as true—although it is not necessarily required to do so. *See Dreamland Baby Co. v. Consumer Prod. Safety Comm'n*, No. CV 24-3277 (RC), 2025 WL 2758476, at *6 (D.D.C. Sept. 26, 2025) ("Courts need not accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice." (cleaned up)).

approved" her flexible work schedule. *Id.* ¶ 39. The end of her remote-work agreement and her flexible work schedule mark the seventh and eighth alleged adverse employment actions. *Id.* ¶¶ 38–39.

Although Ms. Hogg's remote-work agreement "was set to expire on May 31, 2023," the State Department "offered to extend it to July 31, 2023, and Ms. Hogg accepted." *Id.* ¶ 40. But the State Department understood that Ms. Hogg had "refused to sign or acknowledge the extension" and therefore it advised her that she "was no longer on" a remote-work agreement. *Id.* ¶ 12.

This, Ms. Hogg alleges, was "patently false." *Id.* Ms. Hogg had "draft[ed] the acceptance herself" and, as part of the acceptance, been "required to give up her initial accommodation of a flexible work schedule." *Id.* The State Department ultimately relented and extended Ms. Hogg's remote-work agreement to July 31, 2023. *Id.* ¶ 41. Unassuaged, Ms. Hogg labels this initial denial of an extension as adverse employment action number nine. *Id.* ¶ 40. And she denounces the subsequent grant of her requested extension as adverse employment action number ten because it was conditioned on her "giv[ing] up her initial accommodation of a flexible work schedule"—which, as noted above, she also alleged was the case for the initial extension offer. *Id.* ¶¶ 40–41. Ms. Hogg then asked for a further extension of her remote-work agreement beyond July 31, which Ms. Bray denied—the eleventh adverse employment action. *Id.* ¶ 42.

The State Department then presented Ms. Hogg with a different option. Management offered Ms. Hogg "reassignment" to "a 'potential detail opportunity' with a different department" that would "allow Ms. Hogg to continue to work from home." *Id.* ¶ 43. But where the State Department saw an olive branch, Ms. Hogg saw a twelfth adverse employment action.

*See id.* She alleges the detail would have "chang[ed] [her] job duties entirely in an effort to set her up for failure to give Defendants [ ] a feigned reason to fire [her] and have it look like it was not due to her disability." *Id.*

Ms. Hogg also alleges that her accumulated leave under the Family Medical Leave Act ended on January 5, 2024. *Id.* ¶ 44. But management treated her leave "as 'unauthorized and unscheduled absence from work' and placed her into AWOL status." *Id.* From this, Ms. Hogg arrives at adverse employment act number thirteen. *Id.*

At some point after this, the State Department advised Ms. Hogg that her department's "operational posture and work demands had returned to pre-COVID norms and necessitated her return to in-office work in Washington, D.C." *Id.* ¶ 45. Management informed her "that a remote work agreement was no longer a viable option for her because it fell outside the scope of her position record, classified settings, as well as outside the jurisdiction of her official domestic duty station." *Id.*

Ms. Hogg alleges that this new position "was quite false." *Id.* Her "position description was not created and drafted until March 2020" and stated that she could "remotely start in March 2020 and allowed her to build a new division and lead a team to do the work of a portfolio that she designed." *Id.* ¶ 45(a). Her "official domestic duty station" had been changed "to Phoenix in February 2022 due to her . . . medical care located at the Mayo Clinic in Arizona and because Defendants would not provide . . . care and treatment anywhere else." *Id.* ¶ 45(c).

Nor did her position require a "Top Secret security clearance" or "any work to be done in a classified setting." *Id.* ¶ 45(b). Even if classified materials were required, "there were three 'Classified Drop' . . . offices in the Phoenix area which had agreed to allow Ms. Hogg to use their stations whenever needed." *Id.* When Ms. Hogg told her management about these drop

locations she "was advised to 'cease and desist' her efforts to utilize" them due to "lack of funding." *Id.* Ms. Hogg alleges "no additional funding was necessary." *Id.* Ms. Hogg further alleges that her "duties and responsibilities were able to be performed remotely and done well." *Id.* ¶ 45(c). These allegedly pretextual reasons for requiring Ms. Hogg to return to work in Washington, D.C. denote the fourteenth alleged adverse employment action. *Id.* ¶ 45.

Finally, Ms. Hogg alleges that she was terminated. *See id.* ¶ 70. She does not allege that this was an adverse job action. The complaint also does not indicate when this happened or any circumstances surrounding the termination other than to say that she was "fired solely because of her disability, which has undercut her efforts to advance in her career." *Id.* She further alleges, upon information and belief, that "similarly situated employees within the State Department who are not disabled have not been subject to this type of treatment." *Id.*

**B. Administrative Proceedings**

As previously noted, Ms. Hogg filed an administrative complaint regarding her employment conditions on April 3, 2023. *See* Compl. ¶ 46. The Court bases the description below on the allegations in Ms. Hogg's federal complaint as well as Ms. Hogg's administrative complaints and the agency's final decision, which the parties have attached to their briefs. *See* Pl.'s Opp'n, Decl. of Carey Hogg, Ex. A ("Final Decision"), ECF No. 13-2; *see also* Defs.' Mot. to Dismiss Pl.'s Compl. ("Defs.' Mot."), Exs. A–D, ECF No. 9. The Court considers these documents that fall outside the four-corners of Ms. Hogg's complaint at this stage for the limited purpose of evaluating administrative exhaustion. *See Vasser v. McDonald*, 228 F. Supp. 3d 1, 9–11 (D.D.C. 2016). The Court does *not* consider them for purposes of the parties' other arguments. Nor does the Court consider the unrelated statements in Ms. Hogg's declaration that

she attached to her opposition brief, which are not properly before the Court at this stage. *See Lamb v. Millennium Challenge Corp.*, 573 F. Supp. 3d 346, 350 (D.D.C. 2021).

After Ms. Hogg filed her formal administrative complaint, the State Department sent Ms. Hogg a Notice of Acceptance Letter with a list of Amended and Accepted Allegations. *See* Defs.' Mot., Ex. D ("Notice of Acceptance Letter") at 1, ECF No. 9-4. The letter acknowledged Ms. Hogg's claims regarding (1) the loss of "contractor oversight"; (2) the expiration of her "remote work arrangement" with "no effective accommodation" implemented to replace it; (3) "a negative Rater Progress Review Summary" on July 21, 2023; and (4) being "marked as AWOL" for a "prior pay period." *Id.* The letter also acknowledged that Ms. Hogg alleged she had "been subject to hostile work environment harassment, characterized by but not limited to the events listed above and" the reevaluation of her accommodation and the failure to establish performance goals. *Id.* at 2.[2]

The agency denied all of Ms. Hogg's claims on March 18, 2025. *See* Final Decision at 1, 6. Starting with Ms. Hogg's reasonable-accommodation claim, the agency found that she could not "perform the essential functions of her position" with "the accommodation of [her] choice"—a remote-work agreement. *Id.* at 37.[3] The agency credited Ms. Blum's testimony that while Ms. Hogg had been on a remote-work agreement, she had been unable to perform many important parts of her job, including participating in "a bulk" of the agency's new projects for 2023, researching and analyzing with "classified systems," accessing "in-person sensitive

[2] This list of allegations appears to be a slightly expanded version of what Ms. Hogg initially alleged in her administrative complaint. Defs.' Mot., Ex. C at 4, ECF No. 9-3

[3] The agency also denied Ms. Hogg's claim regarding the revocation of her prior accommodation, finding that before 2023 Ms. Hogg had not actually requested an accommodation through the proper channels and instead merely received "permission to maintain a flexible work schedule and work remotely from Arizona" outside of a disability-related accommodation. *Id.* at 35.

meetings" and "discussions," and attending "classified interagency meetings." *Id.* Although Ms. Hogg "claimed that her position [did] not involve working with classified information, this statement [did] not account for the reorganization of the [department] and [Ms. Hogg's] updated work requirements." *Id.* at 36.

The agency also reasoned that, even though Ms. Hogg could not perform her essential job functions with her preferred accommodation, the agency offered her other accommodations that would accommodate her while enabling her to perform all essential job functions. *See id.* at 37. For example, the State Department offered Ms. Hogg "a variable schedule whereby [she] could complete eight hours of work within a twelve-hour period with only a portion of that time scheduled as 'core hours'" and "offered non-remote telework for portions of the work week, as well as workplace flexibility to accommodate [Ms. Hogg's] many medical appointments." *Id.* The State Department also "agree[d] to [Ms. Hogg's] request for a year-long detail assignment in another bureau that allowed remote work[,] which [Ms. Hogg] later rejected." *Id.* at 38.

From the agency's perspective, Ms. Hogg "continued to request [a remote-work agreement] not to remove a barrier to the workplace but rather to improve her financial situation." *Id.* The agency cited statements from Ms. Hogg indicating that the reason she could not return to Washington, D.C., derived from the financial burden she incurred from her medical costs. *See id.* But when Ms. Hogg eventually received "a 'Secretarial Designation' authorizing her to receive cost free medical care at Walter Reed's program," a healthcare program in "the National Capital Area," she still declined to relocate. *Id.*

The agency addressed Ms. Hogg's disparate-treatment and retaliation claims together and concluded that the State Department had taken the alleged adverse-job actions for legitimate, non-discriminatory reasons. *See id.* at 39. The agency concluded that

> [t]he removal of oversight of [Ms. Hogg's principal contractor] was based on [Ms. Hogg's] inability to manage her properly; the ending of [Ms. Hogg's] remote work agreement was due to changes in the work of the office to include the ability to work on [classified networks] thus requiring [Ms. Hogg] to return to D.C.; the progress review was well-supported; and the AWOL charge was the result of [Ms. Hogg's] failure to timely file appropriate documents requesting [family medical leave].

*Id.*

Finally, the agency rejected Ms. Hogg's hostile-work-environment claim. According to the agency, Ms. Hogg had "related that in addition to the removal of her reasonable accommodation and the unfair mid-year review, numerous other actions already described in her testimony taken by Ms. Blum and Ms. Bray constituted harassment as well as being discriminatory." *Id.* at 40. But the agency found that "[a] review of the record showed no evidence" of "unwelcome verbal or physical conduct," and Ms. Hogg had "failed to show that her disability or protected EEO activity were the motivating factors for management's actions." *Id.* at 41. It concluded that she had "not allege[d] sufficient facts to show that her workplace was permeated with hostile or abusive verbal or physical conduct[ ] based on her membership in a protected class." *Id.* at 42.

Ms. Hogg now sues Defendants in federal court. She brings three counts: (1) failure to accommodate her disability, (2) disparate treatment based on her disability, and (3) retaliation for raising claims regarding her disability. *See* Compl. ¶¶ 51–72.

## III. LEGAL STANDARD

Defendants' motion raises two types of issues with different legal standards. The Court must determine first whether Ms. Hogg has administratively exhausted all her claims such that the Court may exercise subject-matter jurisdiction over them and second whether Ms. Hogg states a claim for any of those claims over which the Court has jurisdiction.

In cases where administrative exhaustion implicates the Court's subject-matter jurisdiction, "plaintiff bears the burden of alleging facts sufficient to establish that he or she exhausted administrative remedies and bears the ultimate burden of proof." *Williams v. Brennan*, 320 F. Supp. 3d 122, 127 (D.D.C. 2018), *aff'd*, No. 18-5256, 2019 WL 669716 (D.C. Cir. Feb. 12, 2019). By contrast, "Federal Rule 12(b)(6) places th[e] burden on the moving party" to show that the complaint fails to state a claim. *Cohen v. Bd. of Trs. of the Univ. of the D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That means the plaintiff must "plead[ ] factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## IV. ANALYSIS

The Court starts with Defendants' argument that it lacks subject-matter jurisdiction over certain allegations in the complaint. The Court agrees, but only in part. The Court then addresses each of Ms. Hogg's three counts in turn. It concludes that she states a claim under a failure-to-accommodate theory (Count I) but fails to state a retaliation or disparate-treatment claim (Counts II–III). Next, the Court addresses Defendants' argument that the Rehabilitation Act does not permit punitive and emotional-distress damages, and the Court dismisses the punitive damages but permits the claim for emotional-distress damages. Finally, the Court

considers Ms. Hogg's requests for leave to amend and jurisdictional discovery—partially granting leave to amend and denying jurisdictional discovery.[4]

**A. Administrative Exhaustion**

A federal employee (as distinguished from non-federal employees) may sue under the Rehabilitation Act only if they are "'aggrieved by the final disposition' of their administrative 'complaint.'" *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (quoting 29 U.S.C. § 794a(a)(1)); *see Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 83 (D.D.C. 2021) (distinguishing claims brought by non-federal employees). That means the employee must first file an administrative complaint and give their employing agency an opportunity to consider it before running to federal court—a process known as administrative exhaustion. *See Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015). This statutory exhaustion requirement acts as a condition on the federal government's waiver of sovereign immunity for Rehabilitation Act claims. *See Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 34 (D.C. Cir. 2014). And without a Congressional waiver of federal sovereign immunity, this Court lacks jurisdiction over a case. *United States v. Miller*, 604 U.S. 518, 527 (2025) ("Sovereign immunity is jurisdictional in nature and deprives courts of the power to hear suits against the United States absent Congress's express consent." (cleaned up)). Putting this all together, this Court only has jurisdiction over claims that have been properly exhausted through the administrative process.[5]

[4] Because the Court concludes that Ms. Hogg fails to state a retaliation claim it need not address at this time Defendants' argument that this claim separately violates Fed. R. Civ. P. 8. *See* Defs.' Mot. at 25.

[5] That is not to say that *all* exhaustion requirements in this context are jurisdictional. Beyond the statutory requirement discussed above, there are also regulatory requirements for how an employee must proceed through the administrative process. *See, e.g.*, 29 C.F.R. § 1614.105(a) (requiring an employee to "consult a Counselor prior to filing a complaint in order to try to informally resolve the matter"). Defendants imply that these requirements are also jurisdictional, *see* Defs.' Mot. at 13, but the D.C. Circuit has rejected that view and suggested

Defendants argue that Ms. Hogg failed to exhaust many of her claims because she failed to raise them in her administrative complaint. Of particular note, they argue that Ms. Hogg never exhausted any of her claims after November 17, 2023, because she "identified no issue in her" administrative complaint after that date. Defs.' Mot. at 14. That would exclude Ms. Hogg's eventual termination. Ms. Hogg acknowledges that her administrative complaint does not include all the protected activity and retaliation she alleges now. But she insists that she has exhausted all claims because even those not included in her administrative complaint were (1) sufficiently related to her claims raised in her administrative complaint and, (2) for a subset of her claims, actually adjudicated by the agency. Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 11, 19–20, ECF No. 13.

The Court agrees with Ms. Hogg second argument. Raising a related claim does not satisfy the exhaustion requirement. But if the agency adjudicates a claim, then that claim is exhausted regardless of whether Ms. Hogg raised it in her administrative complaint.

### 1. Exhaustion Requires More than Merely Raising "Related" Claims

Starting with Ms. Hogg's first argument, she cannot exhaust a claim simply by raising a related claim during the administrative proceedings. She must exhaust her "administrative remedies with respect to each discrete allegedly discriminatory or retaliatory act." *Prescott-Harris v. Fanning*, No. CV 15-1716 (RC), 2016 WL 7223276, at *3 (D.D.C. Dec. 12, 2016) (quoting *Wada v. Tomlinson*, 517 F. Supp. 2d 148, 183 (D.D.C. 2007), *aff'd*, 296 F. App'x 77 (D.C. Cir. 2008)). That applies even to the extent a discriminatory or retaliatory act was simply

---

that only the statutory requirement holds jurisdictional status. *See Doak v. Johnson*, 798 F.3d 1096, 1104 (D.C. Cir. 2015). Although the Court must address jurisdictional arguments first, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), the Court declines to address any non-jurisdictional exhaustion arguments because doing so is unnecessary to resolve this motion.

the culmination of previous conduct. "[C]ourts in this Circuit have specifically rejected attempts . . . to piggy-back termination claims that are the 'culmination' of [ ] properly exhausted hostile work environment or discrimination claims." *Terveer v. Billington*, 34 F. Supp. 3d 100, 113 (D.D.C. 2014) (collecting cases).

Ms. Hogg's contrary argument relies on outdated precedent. She invokes on a line of cases deriving from *Park v. Howard University*, 71 F.3d 904 (D.C. Cir. 1995). *See* Pl.'s Opp'n at 11–12. In that case, the D.C. Circuit reasoned that a plaintiff could raise any claims "like or reasonably related to the allegations of the [administrative complaint] and growing out of such allegations." *Park*, 71 F.3d at 907 (quoting *Cheek v. W. & S. Life Ins.*, 31 F.3d 497, 500 (7th Cir. 1994)).

*Park* and its progeny, however, have not stood the test of time. In 2002, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The Court specifically rejected a continuing-violation theory that would allow plaintiffs to raise related claims with respect to such discrete acts, like "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114.[6] Although *Morgan* involved a timeliness issue under the statute of limitations, most courts in this district have applied its logic to exhaustion requirements as well, concluding that *Park* is out of step with *Morgan*. *See Mount v. Johnson*, 36 F. Supp. 3d 74, 84–86 (D.D.C. 2014) (Jackson, J.) (canvassing cases); *see, e.g.*,

[6] Ms. Hogg insists that *Morgan* supports her position because it carved out an exception for hostile-work-environment claims, which it recognized "are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." *Id.* at 115; *see* Pl.'s Opp'n at 19. The problem is that, although Ms. Hogg raised a hostile-work-environment claim during the administrative proceedings, she does not raise one here. Because she raises only discrete claims, she cannot proceed on a continuing-violation theory.

*Hargrove v. AARP*, 205 F. Supp. 3d 96, 119 (D.D.C. 2016) ("The Court is convinced that the reasonably related rule no longer reflects the state of the law." (cleaned up)). And although *Morgan* arose in the context of Title VII (like *Park*), many courts, including this one, have extended its logic to exhaustion under the Rehabilitation Act. *See, e.g.*, *Prescott-Harris*, 2016 WL 7223276, at *3.[7]

Ms. Hogg tries to get around this by casting her argument in terms of constitutional due process. She argues that because she was not informed about her termination until three months after the fact, she was deprived of the ability to exhaust any claims regarding her termination. *See* Pl.'s Opp'n at 16. She therefore appears to bring an as-applied challenge to the constitutionality of the statutory exhaustion requirement.

This argument suffers from numerous flaws, a few of which the Court discusses below. First, Ms. Hogg does not actually develop any constitutional argument. She simply states that the Fifth Amendment protects liberty and property. *See id.* She cites no precedent and makes no argument as to why the exhaustion requirement, even if it did preclude her from bringing a wrongful-discharge claim under the Rehabilitation Act, violates that guarantee. Nor does she explain why she could not simply have filed a new administrative complaint once she learned of her termination or why being forced to file a second administrative complaint would violate her due process rights. *See Al-Saffy v. Vilsack*, 827 F.3d 85, 98 (D.C. Cir. 2016) ("If an employee did not at the time of the alleged discriminatory action know or have reason to know that an employment decision was discriminatory in nature, the time limits for filing an administrative

[7] The D.C. Circuit has repeatedly declined to address the vitality of its pre-*Morgan* precedent. *See Webster v. Del Toro*, 49 F.4th 562, 568 (D.C. Cir. 2022) ("We have twice reserved the question whether *Park* survives *Morgan*. We do the same here . . . ." (citation omitted)).

complaint may be tolled." (cleaned up)) (involving Title VII); *Doak*, 798 F.3d at 1104 (explaining the same is true for the Rehabilitation Act). The Court will not entertain this constitutional challenge to a statute when Ms. Hogg has not even explained her argument. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("Mentioning an argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones is tantamount to failing to raise it." (cleaned up)).

Second, in terms of factual support, Ms. Hogg cites to only statements in her declaration, as opposed to allegations in the complaint. Her declaration, which was neither attached nor incorporated by reference into the complaint, is not properly before the Court and therefore those statements cannot be considered. *See Haymon v. District of Columbia*, 610 F. Supp. 3d 101, 108 (D.D.C. 2022).

Third, the only potentially relevant case Ms. Hogg cites has nothing to do with due process. She focuses on *Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir. 1981). Pl.'s Opp'n at 16–17. That case, however, never mentions due process. Instead, it resembles the D.C. Circuit's decision in *Park*. *See Gupta*, 654 F.2d at 414 (holding that exhaustion is unnecessary for retaliation claims "growing out of an earlier charge"). And like *Park*, the Fifth Circuit itself has called that precedent into question, as have judges in this District. *See Simmons-Myers v. Caesars Ent. Corp.*, 515 F. App'x 269, 274 n.1 (5th Cir. 2013) (per curiam) (unpublished) ("We note that *Gupta* may no longer be applicable after the Supreme Court's decision in *Morgan*." (citation omitted)); *see, e.g.*, *Adams v. Mineta*, No. CIV.A.04-856 (RBW), 2006 WL 367895, at *4 (D.D.C. Feb. 16, 2006) (declining to follow *Gupta* post-*Morgan*).

**2. Claims Actually Adjudicated by the Agency Are Exhausted**

Although the Court rejects Ms. Hogg's principal argument, her fallback position finds more purchase. She argues that the agency's final decision addressed many of the claims that Defendants argue she failed to exhaust, so at least those claims are exhausted. Pl.'s Opp'n at 19–20.

The Court agrees (at least for purposes of subject-matter jurisdiction) because the statutory exhaustion requirement pays attention not only to the employee's complaint but also to the agency's decision. An employee exhausts any claims for which she is "aggrieved by *the final disposition* of [the administrative] complaint." 29 U.S.C. § 794a(a)(1) (emphasis added). To the extent the final disposition, in this case the agency's final decision, considered and rejected claims not properly raised in the administrative complaint, Ms. Hogg is still aggrieved by the on-the-merits rejection of those unraised claims. As the D.C. Circuit has explained, a court lacks jurisdiction over a claim due to exhaustion only if the plaintiff "fail[s] to file an administrative complaint *or to obtain any administrative decision*." *Doak*, 798 F.3d at 1103 (emphasis added). The Court interprets this test as disjunctive, so Ms. Hogg may satisfy it if she either raised the claim in her administrative complaint or if the agency disposed of it on the merits.

This conclusion aligns with how courts treat exhaustion in other contexts. When an "agency in fact considers the issue on the merits, [the] general exhaustion requirement can be satisfied even if the party did not properly raise it." *Kennedy for President Comm. v. Fed. Election Comm'n*, 734 F.2d 1558, 1560 n.2 (D.C. Cir. 1984); *see Portillo Flores v. Garland*, 3 F.4th 615, 633 (4th Cir. 2021) (en banc) ("A majority of circuits have found a claim exhausted 'whenever the agency has elected to address in sufficient detail the merits of a particular issue,'

even if the agency raised it sua sponte, because 'by addressing an issue on the merits, an agency is expressing its judgment as to what it considers to be a sufficiently developed issue.'" (quotation omitted)); *Watson v. Henderson*, 222 F.3d 320, 322 (7th Cir. 2000) ("That is to say, an issue may be deemed exhausted if *either* presented to the EEOC in a statement *or* actually addressed by the agency."). That is because, if the agency considers the claims (regardless of whether they were properly raised), "the relevant policy concerns underlying the exhaustion requirement—that an administrative agency should have a full opportunity to resolve a controversy or correct its own errors before judicial intervention—have been satisfied." *Abebe v. Gonzales*, 432 F.3d 1037, 1041 (9th Cir. 2005) (en banc) (quotation omitted).

Defendants argue that even claims which the agency addressed are not exhausted because the D.C. Circuit has held that it does not matter whether an agency is on notice of a claim if the employee did not include the claim in the administrative complaint. Reply in Supp. of Defs.' Mot. to Dismiss ("Reply") at 7–8, ECF No. 16. It is true that the D.C. Circuit has held as much, but that does not take Defendants where they want to go. In *Webster v. Del Toro*, 49 F.4th 562 (D.C. Cir. 2022), the D.C. Circuit rejected the argument that a plaintiff could exhaust an unraised claim simply because "the facts underlying [the] claim became apparent during the [agency's] investigation." *Id.* at 568; *see also Davis v. FBI*, No. 25-5061, 2025 WL 2982518, at *1 (D.C. Cir. Oct. 16, 2025) (per curiam) (unpublished) ("Nor does appellant's allegation that the Federal Bureau of Investigation was on notice that she had previously sought a religious accommodation suffice to satisfy the exhaustion requirement.").[8]

[8] The Court is thus unpersuaded by Ms. Hogg's argument that she exhausted her claims merely because the agency was on notice of them. *See* Pl.'s Opp'n at 12.

Being on notice of a claim, however, is not the same as actually deciding a claim. While an agency may reasonably decide not to address a claim that an employee fails to properly raise, as appears to have been the case in *Webster*, it may also elect to address the claim and save itself the trouble of dealing with another administrative complaint down the line raising that claim, as it seems to have done here. Requiring Ms. Hogg to refile her administrative complaint notwithstanding the agency's decision to address these claims would frustrate that decision. It would require her to raise a claim the agency had already denied on the merits.

To be sure, the court in *Webster* explained that allowing mere notice to exhaust an improperly presented claim would "invert the basic rule that the employee must identify for the agency the claims that she wishes to pursue." *Webster*, 49 F.4th at 568. But, as the cases discussed above illustrate, that basic rule does not apply when the decisionmaker reaches out and decides an issue not properly presented by a party. Courts routinely hold that a party does not forfeit an issue that the court below actually decided. *See, e.g.*, *Tanner-Brown v. Haaland*, 105 F.4th 437, 444 (D.C. Cir. 2024) ("[Forfeiture] concerns are eliminated if the district court has in fact considered the new claim."); *see also, e.g.*, *United States v. Williams*, 504 U.S. 36, 41 (1992) (explaining in the context of a writ of certiorari that the Court may "review [ ] an issue not pressed [by a party] so long as it has been passed upon" by the lower court). At any rate, the Court does not read that sentence from *Webster* as "attach[ing] irremediable jurisdictional consequence" to exclusively the complaint while paying no heed to the agency's decision, given that the statute also considers the agency's final disposition as part of the exhaustion analysis. *Doak*, 798 F.3d at 1104.[9]

[9] For the same reason, the Court rejects Defendants' argument that the issues are not exhausted because Ms. Hogg failed to object to the claims as presented in the agency's Notice of Acceptance Letter. *See* Defs.' Mot. at 16–17. In some cases, a plaintiff's failure to correct the

**3. The Agency Actually Adjudicated Some, But Not All, of Ms. Hogg's Claims**

Ms. Hogg argues that the agency's decision encompassed many of her claims, and she quotes various snippets from the agency decision that she contends reference those claims; but many of those quotes bear little connection to the claim asserted here. For example, Ms. Hogg alleges that she exhausted her claim regarding the temporary denial of her extension request for her remote-work agreement (adverse action number nine) because the agency wrote that in July 2023 a supervisor "proposed a new flexible schedule for [Ms. Hogg] with accommodations for [her] treatments . . . which [Ms. Hogg] approved." Pl.'s Opp'n at 20 (quoting Final Decision at 13). But none of this mentions an extension for Ms. Hogg's *remote-work agreement*, nor does it mention the alleged temporary revocation of that offer, which is what Ms. Hogg now claims was the alleged adverse action. *See* Compl. ¶ 40.

In a similar vein, Ms. Hogg claims that a statement regarding being "tasked with many additional duties and responsibilities with severe deadlines" exhausts her twelfth adverse employment action, which was about being offered a detail opportunity as an accommodation. Pl.'s Opp'n at 20 (quoting Final Decision at 11). But that statement was made in the context of Ms. Hogg complaining about a performance review, which cannot be related to the detail opportunity because she never accepted the detail. *See* Final Decision at 11. Although the agency may have been aware of the detail opportunity—it is referenced elsewhere in the decision—nothing in the decision convinces the Court that the agency considered a claim that this offer was an adverse employment action. *See* Final Decision at 37–39.[10] The same goes for

omission of a claim from an agency's notice will preclude exhaustion. *See Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 67 (D.D.C. 2015), *aff'd*, No. 15-5137, 2015 WL 9309960 (D.C. Cir. Dec. 4, 2015). But where, as here, the agency nonetheless addresses the claim, it is exhausted.

[10] Parts of the decision suggest that the agency may have understood that Ms. Hogg requested the detail. *See id.* at 37–38 ("Moreover, although not required to, the Agency went as

alleged adverse actions four and ten, which the Court cannot find referenced in the Final Decision despite Ms. Hogg's protestations to the contrary.

On the other hand, the agency considered, and expressly rejected, some of the claims that Defendants argue were not exhausted. For example, Defendants argue that Ms. Hogg did not exhaust the second and third adverse employment actions, regarding Ms. Hogg losing key oversight responsibilities and being forced to take over work from a departing contractor. *See* Defs.' Mot. at 17. The agency's decision, however, discusses Ms. Hogg's claim that she was being "strip[ped] of [a] crucial set of duties" and that one of her contractors "resigned," meaning "she would have to backfill" his position. Final Decision at 9. Similarly, Defendants dispute whether Ms. Hogg exhausted the fifth and sixth alleged adverse actions—the performance goals and Ms. Bray's alleged refusal to meet with Ms. Hogg to discuss them. *See* Defs.' Mot. at 17. But the agency recounted Ms. Hogg's allegations regarding Ms. Bray's "repeated refusal to discuss [her] performance goals." Final Decision at 11. Finally, Defendants challenge adverse action number eight—the end of Ms. Hogg's flexible work schedule—even though the agency repeatedly referenced Ms. Hogg's claim that "a directive was issued that [she] could not continue with her flexible work schedule." Final Decision at 9; *see also id.* at 10–11.

The Court need not, and does not, decide whether an agency merely mentioning a claim in the summary of the evidence (without expressly stating that the claim was not properly raised) suffices to exhaust the claim, because in this case the agency went further. When addressing

far as agreeing to *Complainant's request* for a year-long detail assignment in another bureau that allowed remote work[,] which Complainant later rejected." (emphasis added)). At other points, the agency suggests that the detail was an option offered to Ms. Hogg on the State Department's initiative. *See id.* at 39 ("Moreover, management showed significant effort to address Complainant's situation, including trying to find her a detail where should could work remotely . . . ."). In either case, the agency does not appear to have considered Ms. Hogg's claim that offering the detail was an adverse employment action.

Ms. Hogg's hostile-work-environment claim, the agency explained that Ms. Hogg argued that "numerous other actions *already described in her testimony* taken by Ms. Blum and Ms. Bray constituted harassment as well as being discriminatory"—thereby referencing the allegations in Ms. Hogg's testimony. *Id.* at 40 (emphasis added). The agency then went on to say that Ms. Hogg "failed to show that her disability or protected EEO activity were the motivating factors for management's actions." *Id.* at 41. From this, the Court understands the agency to have decided that these other actions that it recounted when summarizing Ms. Hogg's testimony were not carried out with a retaliatory or discriminatory motive. Although the agency addressed these allegations within the context of a hostile-work-environment claim, that finding would dispose of the retaliation and discrimination claims that Ms. Hogg now brings in federal court. The claims are therefore exhausted, at least for purposes of subject-matter jurisdiction.

The upshot of all this is that the Court has jurisdiction over some, but not all, of Ms. Hogg's claims. For the unexhausted claims, Congress has determined that the agency should have an opportunity to consider them internally, and it has not empowered this Court to jump the line. The Court now turns to whether Ms. Hogg has stated a claim for the counts she brings in federal court.

**B. Failure to Accommodate**

To state a failure-to-accommodate claim under the Rehabilitation Act, Ms. Hogg must plausibly allege that (1) she was disabled within the meaning of the act, (2) Defendants had notice of her disability, and (3) Defendants denied her reasonable request for an accommodation. *Chenari v. George Wash. Univ.*, 847 F.3d 740, 746–47 (D.C. Cir. 2017). An accommodation is only "'reasonable' if it enables the employee to fulfill all essential functions of [her] job." *Buie*

*v. Berrien*, 85 F. Supp. 3d 161, 172 (D.D.C. 2015) (citing *Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007)).

Defendants focus their challenge on the third element—whether they denied Ms. Hogg a reasonable accommodation. They argue that after Ms. Hogg requested an accommodation they offered her a reassignment to another department during which she could work from home. *See* Defs.' Mot. at 21; Compl. ¶ 43. As Defendants see it, because Ms. Hogg herself alleges that flexible telework would accommodate her disability, Compl. ¶ 63, their proposed accommodation was reasonable. Defs.' Mot. at 21–22. They emphasize that employers are free to choose between various reasonable accommodations and are not "required to provide an employee [the] accommodation [that employee] requests or prefers." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (en banc) (quotation omitted).

The problem with Defendants' argument is that Ms. Hogg plausibly alleges that she could have been reasonably accommodated without reassignment, and courts generally treat reassignment as a last resort. "[R]eassignment" is "an option to be considered only after other efforts have failed." *Aka*, 156 F.3d at 1301; *see also* 29 C.F.R. Pt. 1630, App. § 1630.2(*o*) ("In general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship."); State Department, Foreign Affairs Manual, 3 F.A.M. § 3676.5 (Sept. 26, 2023) (similar).

Admittedly, these cases typically arise in the context of an *employer* resisting reassignment, as opposed to an *employee* resisting reassignment, as is the case here. Sometimes, the employer argues that because they cannot accommodate the employee in their current position, they need not provide any accommodation, and the court holds they must consider reassignment as a last resort. *See, e.g.*, *Aka*, 156 F.3d at 1301. Other times, the employee prefers

reassignment over the accommodation provided by the employer, and the court holds that the employer is not required to reassign the employee when it can reasonably accommodate them in their current position. *See, e.g.*, *Burchett v. Target Corp.*, 340 F.3d 510, 517–18 (8th Cir. 2003). Here, Ms. Hogg does not argue that she should have been reassigned as an accommodation, and Defendants do not argue that they need not have considered reassignment as an accommodation. Indeed, Defendants offered reassignment. Extending the last-resort rule to this factual scenario would create some tension with the general rule discussed above that employers may choose which reasonable accommodation they wish to offer. *See Aka*, 156 F.3d at 1305.

Still, as the Fourth Circuit has explained (albeit in dicta), the last-resort rule also plays a role in protecting an employee from undesired reassignment.

> Although an employer *may* accommodate through reassignment at any point, reassignment's last-resort status encourages employers to take reasonable measures to accommodate their disabled employees in the positions they already hold. The employee is thereby saved from being hurled into an unfamiliar position with a different set of demands; instead, he is allowed to maintain and to grow the investment he has already made in his present job.

*Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1014 (4th Cir. 2020); *see also Hirlston v. Costco Wholesale Corp.*, 81 F.4th 744, 753 (7th Cir. 2023) ("Costco was required to consider options . . . to keep Hirlston in her current position before resorting to reassignment. Reassignment is an accommodation of last resort."); *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1170 (10th Cir. 1999) (en banc) ("When an employer selects among several possible reasonable accommodations, the preferred option is always an accommodation that keeps the employee in his or her existing job if that can reasonably be accomplished."). And as the Eighth Circuit has chimed in, reassignment can sometimes "constitute an adverse employment action" supporting a discrimination claim, but it is transformed into a reasonable accommodation in situations where "the employee cannot be accommodated in his existing

position." *LeBlanc v. McDonough*, 39 F.4th 1071, 1076 (8th Cir. 2022) (quotation omitted); *see also Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 813 (8th Cir. 2015) (holding transfer was a reasonable accommodation but only because the plaintiff could not perform an essential function of the job they held).

The throughline of these cases is that whether reassignment constitutes a reasonable accommodation (as opposed to an unnecessary or inappropriate accommodation) depends on the surrounding context. The relevant context alleged in this case militates in favor of Ms. Hogg.

In the Court's view, where, as here, the plaintiff plausibly alleges that (1) she could have been reasonably accommodated in her current position and (2) the reassignment would have substantially changed her job responsibilities and her ability to meet her job expectations, she satisfies the third element of a reasonable-accommodation claim. Ms. Hogg alleges that she could have been reasonably accommodated by keeping her current flexible, remote-work schedule from Arizona. Compl. ¶ 53. And she alleges the reassignment would have changed her "job duties entirely" and "set her up for failure." *Id.* ¶ 43.

Defendants resist this conclusion by arguing that Ms. Hogg could not have been reasonably accommodated without a transfer because her job required her to access classified information, which she could not do from Arizona. *See* Defs.' Mot. at 22. And Defendants stress that Ms. Hogg does not get to define the essential functions of her job—only her employer may do that. Reply at 13 (citing *Credeur v. Louisiana ex rel. Off. of Att'y Gen.*, 860 F.3d 785, 793 (5th Cir. 2017)).

Ms. Hogg, however, has plausibly alleged otherwise. She alleges that she had previously performed her job remotely from Arizona for years without any issue, which permits a reasonable inference that she could continue to do so. Compl. ¶¶ 30–31. Defendants invite the

Court to draw a different inference, Reply at 13, but at this stage the Court must draw all reasonable inferences in favor of Ms. Hogg. *See Menoken v. Dhillon*, 975 F.3d 1, 5 (D.C. Cir. 2020).

Similarly, Ms. Hogg alleges that access to confidential information was not an essential component of the job and, even if it were, it could be achieved through other means. Compl. ¶ 45(b). Ms. Hogg may not be free to define the essential elements of her job. *See Norden v. Samper*, 503 F. Supp. 2d 130, 145 (D.D.C. 2007) ("Courts frequently defer to the employer's judgment as to what functions of a job are essential."). But she does not allege merely that she subjectively *believes* access to confidential information was not an essential part of her job; rather, she alleges that it in fact *was* not an essential function. *See* Compl. ¶ 45. And that allegation suffices at this early stage because it is accompanied, as noted above, by an allegation that she was able to perform the job from Arizona previously without classified information. *See id.* ¶¶ 30–31. Discovery may reveal, as the agency found in the administrative proceeding, that access to classified information was an essential function of the job that could not be done in Arizona. *See* Final Decision at 37. But that determination is for a later stage.

**C. Disparate Treatment**

Ms. Hogg's disparate-treatment claim, however, works differently than her failure-to-accommodate claim. Under a failure-to-accommodate theory, the failure to provide a reasonable accommodation *is* the discrimination. *See Floyd v. Lee*, 968 F. Supp. 2d 308, 316 (D.D.C. 2013) ("The failure to accommodate is itself discriminatory."). "It does not require the plaintiff to prove that the challenged policy intended to discriminate or that in effect it works systematically to exclude the disabled." *See Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 922–23 (10th Cir. 2012) (Gorsuch, J.) ("A claim for reasonable accommodation is yet

a different sort of animal.”). Thus, a plaintiff need not show anything beyond that she was denied a requested reasonable accommodation for her disability. As the Court has already found, Ms. Hogg states such a claim.

Unlike a failure-to-accommodate claim, a disparate-treatment claim requires a plaintiff to show that her employer treated her differently *because of* her disability. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (Kavanaugh, J.). That means she must prove, or at this stage plausibly allege, that “discriminatory animus” motivated her employer’s decision. *Boykin v. Fenty*, No. CV 10-1790 (PLF), 2010 WL 11718210, at *4 (D.D.C. Dec. 17, 2010). She might accomplish this by alleging remarks from decisionmakers displaying animus toward her disability. *See Fisher v. Bessent*, No. 23-CV-00329 (CRC), 2025 WL 2779791, at *8 (D.D.C. Sept. 30, 2025). Or she might allege that, while her employer demanded that she return to in-person work, it permitted other, non-disabled employees with the same job responsibilities to work remotely. *See id.* From allegations like these, the Court might plausibly infer that Ms. Hogg was singled out because of her disability.

But Ms. Hogg provides no such allegations. She does not allege that any of her supervisors made any discriminatory remarks regarding her disability. Indeed, she disclaims any allegation of direct evidence of discrimination. *See* Pl.’s Opp’n at 36. Nor does she allege facts from which the Court could plausibly conclude that similarly situated employees were treated differently than she was.

To be sure, Ms. Hogg makes the conclusory allegation that “the [a]gency has treated [her] differently than it treats similarly situated employees who are not disabled,” Compl. ¶ 69, but that states only a legal conclusion which cannot survive a motion to dismiss. At the motion-to-dismiss stage, Ms. Hogg must allege sufficient facts to show that “the comparators are in fact

'similarly situated' in some meaningful respect." *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530–31 (D.C. Cir. 2025). Here, Ms. Hogg alleges no information about her purported comparators aside from that they were "employees." Compl. ¶ 69. She does not even allege that they held similar positions to hers. And even assuming they held the same position, she does not allege *how* they were treated differently than she was. Were they permitted to work remotely? Were they not required to work with classified material? The complaint does not tell. It leaves the court with only the asserted conclusion that they were similarly situated, which does not suffice to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[M]ere conclusory statements[ ] do not suffice.").

Admittedly, Ms. Hogg alleges further down that "other similarly situated but non-disabled officers have not [been] similarly fired from th[eir] position." Compl. ¶ 69; *see also id.* ¶ 70 (similar). This allegation at least states that they were officers and were not fired. But, as explained above, this Court lacks jurisdiction over any termination-related claims. And the allegation still does not provide "meaningful" information about the comparators. *Joyner*, 140 F.4th at 532 (rejecting a comparator allegation because it did "not show that [the plaintiff] and his comparators worked in the same position in a meaningful sense").

Even if these allegations were sufficient, they would still fail for yet another reason. Ms. Hogg makes all her comparator allegations upon information and belief. *See* Compl. ¶¶ 69–70. "[A]llegations based on information and belief" must "be accompanied by a statement of the facts upon which the allegations are based." *Kareem v. Haspel*, 986 F.3d 859, 866 (D.C. Cir. 2021) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994)). Ms. Hogg does not even attempt to provide a statement on where she got this information about other employees in her complaint.

Ms. Hogg's counterarguments in support of her disparate-treatment claim are unavailing. First, she argues that she need not provide detailed information about her purported comparators at the motion-to-dismiss stage. Pl.'s Opp'n at 37. Maybe so. But "it cannot be enough to simply allege that the plaintiff was treated differently from a 'similarly situated' comparator, without additional allegations showing the comparators are in fact 'similarly situated' in some meaningful respect." *Joyner*, 140 F.4th at 531; *see also Roberts-Gregory v. Am. Ass'n for the Advancement of Sci.*, No. CV 25-1436 (RC), 2026 WL 1732951, at *8–9 (D.D.C. June 16, 2026) (rejecting a similar argument to the one Ms. Hogg makes here).

Second, Ms. Hogg contends that she has established a plausible inference of a discriminatory motive because she alleges a variety of adverse actions that "implicat[ed]" her disability. Pl.'s Opp'n at 37. She argues that her accommodation request was "secretly reevaluated," she was "stripped of her core responsibilities," she was denied "effective accommodation," and she suffered "adverse consequences including a negative evaluation" and an "AWOL designation." *Id.*; *see also id.* at 38 (similar).

The Court is unpersuaded. Many of these alleged adverse consequences are connected to Ms. Hogg's disability only by her say so. For example, she does not explain how removing a contractor from her supervision or assigning her work from other departed contractors implicated or targeted her disability in any unique way. *See* Compl. ¶¶ 7–8. Nor does she draw any connection between being sent "Work Commitment Ideas," a form of performance objectives, and her disability. *Id.* ¶ 36.[11] As for the "negative evaluation" and "poor performance review,"

[11] Perhaps Ms. Hogg assumes these actions are related to her disability because they occurred shortly after the State Department began revaluating her accommodation. *See* Compl. ¶¶ 6–8. Whether temporal proximity between an adverse action and activity related to a plaintiff's accommodation can, standing alone, state a disparate-treatment claim, as opposed to a retaliation claim, is at least debatable. *Compare Haji v. Columbus City Schs.*, 621 F. App'x 309,

the Court has searched the complaint in vain for any allegation about these purportedly adverse actions. *See* Pl.'s Opp'n at 37; *id.* at 38 (citing Compl. ¶¶ 32–44).[12]

The other alleged adverse consequences appear to all be related to her accommodation request. Her employer investigated whether she needed her previous remote-work accommodation; declined to perpetually extend her accommodation; denied her renewed request for an accommodation; and, when she did not return to in-person work, marked her as AWOL. *See* Compl. ¶¶ 6, 11–13, 15. In short, her employer denied her request for an accommodation.

In the Court's view, the denial of an accommodation, standing alone, cannot support a disparate-treatment claim beyond the reasonable-accommodation theory that Ms. Hogg has already stated. Courts in this district have repeatedly reached the same conclusion for retaliation claims: A plaintiff cannot use the accommodation denial as an adverse action for purposes of a retaliation claim. *See McCann v. District of Columbia*, No. 23-CV-2398 (JMC), 2025 WL

316 (6th Cir. 2015) (unpublished) ("[T]emporal proximity is evidence of unlawful motive only in retaliation cases, not disparate-treatment cases."), *with Bergerson v. N.Y. State Off. of Mental Health*, 611 F. Supp. 2d 224, 231–32 (N.D.N.Y. 2009) ("In sum Bergerson has set forth circumstantial evidence of disparate treatment based upon interracial associations as well as temporal proximity."). But Ms. Hogg does not explicitly make a temporal-proximity argument for her disparate-treatment claim. *See* Pl.'s Opp'n at 38. And her complaint alleged *only* a comparator theory for that claim, which the Court has addressed above. *See* Compl. ¶¶ 69–70. Even if Ms. Hogg's brief could be construed as raising a temporal-proximity argument, she does not cite *any* authority supporting that argument. *See* Pl.'s Opp'n at 38. The Government, therefore, did not address any such argument either. *See* Reply at 18–19. Particularly given the uncertainty of the legal landscape surrounding this potential argument, it would be imprudent for the Court to venture an answer without any briefing—not to mention unfair to Defendants who have had no opportunity to respond. *See United States v. US Stem Cell Clinic, LLC*, 998 F.3d 1302, 1312 (11th Cir. 2021) (Jordan, J., concurring) ("[I]f we address and decide an issue not raised by the parties, we do so without the critical assistance that focused briefing can provide, and risk depriving the losing side of the opportunity to be heard, which is the essence of due process."). So the Court deems it forfeited. *See Roberts-Gregory*, 2026 WL 1732951, at *7 n.5.

[12] Presumably Ms. Hogg is referring to the "Rater Progress Review Summary" from July 21, 2023. *See* Final Decision at 6. But she makes no allegation about this in her complaint before this Court.

958130, at *7 (D.D.C. Mar. 31, 2025) (collecting cases). That is because "if the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled." *Floyd*, 968 F. Supp. 2d at 334.

The Court concludes that the same logic applies to a disparate-treatment claim. Reasonable-accommodation claims are a species of disparate-treatment claims where the denial of the accommodation is the discriminatory act. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015); *Floyd*, 968 F. Supp. 2d at 316. Here, Ms. Hogg asks the Court to treat acts which effectively constitute the denial of her accommodation request as discriminatory. That describes a reasonable-accommodation claim. The claim is therefore duplicative and must be dismissed. *See Floyd*, 968 F. Supp. 2d at 334 (dismissing duplicative claims under the Rehabilitation Act); *see also Doe v. Johns Hopkins Univ. Applied Physics Lab'y*, No. CV MJM-25-861, 2026 WL 860587, at *8 (D. Md. Mar. 30, 2026) ("The denial of religious accommodation, by itself, is not sufficient to allege Title VII discrimination based on disparate treatment.").

**D. Retaliation**

To state a retaliation claim, Ms. Hogg must plausibly allege that (1) she "engaged in statutorily protected activity"; (2) Defendants took "a materially adverse action" against her; and (3) her "protected activity was a but-for cause of that adverse action." *Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024) (quotation omitted); *see also Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014) (applying a similar framework to a Rehabilitation Act case). Assuming, without deciding, that Ms. Hogg satisfies the other elements, the Court finds that Ms. Hogg fails to plausibly allege a causal inference between her protected activity and the purported retaliation.

Ms. Hogg's leading causation argument is based on temporal proximity between her protected activity and the alleged retaliation; but time is not on Ms. Hogg's side. *See* Pl.'s Opp'n at 36. Although a plaintiff may establish an inference of causation by showing that the adverse action was "very close" to her protected activity, the inference generally requires the protected activity to have occurred *before* the alleged adverse actions began. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272–73 (2001) (per curiam) (quotation omitted). In *Breeden*, the plaintiff's supervisor mentioned she was contemplating transferring the plaintiff the day before she learned about the plaintiff's protected activity. *See id.* at 271–72. The next month, the supervisor carried out the transfer. *Id.* at 272. The Ninth Circuit held that this was enough for a causal connection at summary judgment in part because "the actual transfer occurred one month after [the supervisor] learned of" the protected activity. *Id.* The Supreme Court summarily reversed. It held that the timing of the transfer was "immaterial in light of the fact that [the supervisor] concededly was contemplating the transfer before it learned of the suit." *Id.* As the Court saw it, "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id.*

Ms. Hogg's retaliation claim suffers the same fate as the claim in *Breeden.* She alleges that the agency "initiated a re-evaluation of [her] current reasonable accommodations" on March 1, 2023. Compl. ¶ 6. She began losing her supervisory responsibilities on March 2, 2023. *Id.* ¶¶ 7–8. But she did not file her complaint and thus engage in protected activity until April 3, 2023. *Id.* ¶ 46. So, even though Ms. Hogg alleges other adverse job actions after she engaged in protected activity, those allegations are "immaterial" because an employer "proceeding along

lines previously contemplated, though not yet definitively determined, is *no evidence whatever* of causality." *Breeden*, 532 U.S. at 272 (emphasis added).

Ms. Hogg counters that courts should not "conduct a full causation analysis" at the motion-to-dismiss stage. Pl.'s Opp'n at 35. To her credit, *Breeden* was decided in a summary-judgment posture. And one court in this district has expressed misgivings about applying it at the motion-to-dismiss stage. *See Heagney v. Bondi*, No. CV 24-2592 (SLS), 2025 WL 1496315, at *11 (D.D.C. May 22, 2025), *reconsidered in part*, No. CV 24-2592 (SLS), 2025 WL 2374536 (D.D.C. Aug. 14, 2025).

But the D.C. Circuit has recently applied similar logic to *Breeden* at the motion-to-dismiss stage. *See Yee v. Blanche*, No. 24-5033, 2026 WL 1876231, at *5 (D.C. Cir. June 30, 2026) (per curiam). In *Yee*, the D.C. Circuit affirmed the dismissal of a retaliation claim that involved a "continuing" course of allegedly retaliatory conduct which began before the protected activity but continued past it. *Id.* at *4. The court held that "[t]here can clearly be no causal connection here, where the alleged retaliatory behavior *began* before the alleged protected activity." *Id.* (emphasis added); *see also Eugene v. City of New York*, No. 25-CV-6173 (LJL), 2026 WL 1831351, at *15 (S.D.N.Y. June 25, 2026) (dismissing retaliation claim "at the pleading stage" because even though termination occurred after the plaintiff engaged in protected activity, the plaintiff was placed on a performance-improvement plan before the protected activity) (collecting cases). Here, the alleged retaliatory conduct began before Ms. Hogg engaged in protected activity, even if some of the allegedly retaliatory acts took place afterward.[13]

[13] *Heagney* is distinguishable as well. The court in that case emphasized that the plaintiff did not allege that the agency began "contemplating" the adverse action before the protected activity. *Heagney*, 2025 WL 1496315, at *12. *Heagney* went as far as to distinguish the district

In any event, even if *Breeden* does not apply with full force at the motion-to-dismiss stage, Ms. Hogg still fails to plausibly allege causation because her own complaint provides a compelling alternative explanation that she fails to undercut. *See Ho*, 106 F.4th at 54 (noting a plaintiff alleging discrimination must "dispel any obvious alternative explanations" (cleaned up)); *see also Roberts-Gregory v. Am. Ass'n for the Advancement of Sci.*, No. CV 25-1436 (RC), 2026 WL 1732951, at *6 (D.D.C. June 16, 2026) ("[W]here the Complaint alleges that the [employer] provided a facially neutral explanation for its decision . . . [the plaintiff] must allege something more to create a plausible inference that the [defendants] acted with a discriminatory motive."). Ms. Hogg alleges that management told her that "operational posture and work demands had returned to pre-COVID norms and necessitated her return to in-office work." Compl. ¶ 45. So the change in the State Department's approach to Ms. Hogg's remote-work status can be explained by a return to a pre-COVID posture. Ms. Hogg fails to dispel this "obvious alternative explanation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). On the contrary, her allegations support it because she alleges that her "position description was not created and drafted until March 2020"—a time when many American organizations were implementing responses to the pandemic. Compl. ¶ 45(a).

Nor can Ms. Hogg harken back to her initial accommodation request in or before 2021. *Id.* ¶ 5.[14] Although that alleged protected activity in 2021 predates the allegedly retaliatory acts beginning in 2023, it does so by years, which is too distant even for a motion to dismiss. *See*

---

court decision that the D.C. Circuit reviewed in *Yee* on its facts. *See id.* Here, by contrast, Ms. Hogg herself alleges that the reevaluation began before her protected activity.

[14] It is unclear whether Ms. Hogg alleges that her accommodation began in January 2020, when she alleges "senior leadership established reasonable accommodations for [her] that allowed her to telework," Compl. ¶ 4, or at some point after she was diagnosed in May 2021, *id.* ¶ 5.

*Spence v. United States Dep't of Veterans Affs.*, 109 F.4th 531, 540 (D.C. Cir. 2024) (rejecting temporal proximity of ten months on appeal from motion to dismiss).

Ms. Hogg has one last arrow in her retaliation quiver, but it too misses the mark. She argues that she states a plausible claim because she alleges that the reason given for the denial of her accommodation was pretextual. *See* Pl.'s Opp'n at 35 (quoting *Harrington v. Pompeo*, No. 18-CV-1056 (TSC), 2020 WL 5816217, at *4 (D.D.C. Sept. 30, 2020)). Even assuming her allegation of pretext is plausible, it does not get Ms. Hogg far. The only rationale that Ms. Hogg alleges was pretextual is the explanation given for denying her accommodation request. *See* Compl. ¶ 45. But, as explained above, she cannot maintain a separate retaliation claim based only on the denial of her reasonable accommodation because that would duplicate her accommodation claim. *See McCann v. District of Columbia*, No. 23-CV-2398 (JMC), 2025 WL 958130, at *7 (D.D.C. Mar. 31, 2025). Ms. Hogg evades this duplication problem by alleging other retaliatory acts beyond the denial of her accommodation (such as the loss of supervisory responsibilities), *see* Pl.'s Opp'n at 34, but she does not allege, much less plausibly so, that any of *those* adverse actions were explained with pretextual reasons. Ms. Hogg therefore fails to state a retaliation claim.[15]

**E. Damages**

Defendants ask the Court to dismiss Ms. Hogg's requests for punitive and emotional-distress damages. Defs.' Mot. at 38–39. Ms. Hogg appears to concede that punitive damages are

[15] There is one exception. Ms. Hogg alleges that the State Department's explanation for initially revoking a two-month extension of her remote-work agreement—that she had failed to accept the extension offer—was "patently false," although the State Department later granted the extension anyway. Compl. ¶¶ 12, 41. As explained above, however, Ms. Hogg failed to exhaust this alleged adverse action, so the Court may not consider it as an independent basis to sustain the claim.

unavailable. *See* Pl.'s Opp'n at 39 ("While traditional punitive damages may be barred by 42 U.S.C. § 1981a(b)(1), [Ms. Hogg may receive] compensatory damages for her emotional harm as part of her remedy."); *see also* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) . . . ." (emphasis added)). The Court will accept that concession.

Ms. Hogg's request for emotional-distress damages is more complicated. Defendants argue that the Supreme Court has already held that emotional-distress damages are unavailable under the Rehabilitation Act. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 229–30 (2022); Defs.' Mot. at 38. As Ms. Hogg points out, however, *Cummings* is a Spending Clause case involving Rehabilitation Act claims under 29 U.S.C. § 794 (titled "Nondiscrimination under Federal grants and programs") as opposed to 29 U.S.C. § 791 (dealing with claims against federal agencies). *See Cummings*, 596 U.S. at 218; Pl's Opp'n at 39–40.

Because the Supreme Court grounded its decision in the Spending Clause, that reasoning is not necessarily applicable to the Rehabilitation Act claims here. The Supreme Court explained that, unlike other federal statutes, so-called "Spending Clause legislation operates based on consent: in return for federal funds, the recipients agree to comply with federally imposed conditions." *Cummings*, 596 U.S. at 219 (cleaned up). The law therefore "amounts essentially to a contract between the Government and the recipient of funds." *Id.* (quotation omitted). The scope of such legislation depends "on whether the recipient voluntarily and knowingly accepts the terms of that contract." *Id.* (cleaned up). The Court therefore looked to principles of contract law and reasoned that "it is hornbook law that emotional distress is generally not compensable in contract." *Id.* at 221 (cleaned up). As a result, it could not "treat federal funding recipients as

having consented to be subject to damages for emotional distress. It follows that such damages are not recoverable under the Spending Clause statutes [like the Rehabilitation Act].” *Id.* at 222.

Neither party has developed an argument as to whether the relevant Rehabilitation Act provision here, Section 791, is a Spending Clause statute. And it is not obviously so. All the authority Defendants reference regarding emotional-distress damages, however, relies on this Spending Clause precedent, and none involves Section 791. *See Inko-Tariah v. Cap. One Arena*, No. 22-CV-02802 (APM), 2023 WL 3340114, at *4 (D.D.C. May 10, 2023); *Inko-Tariah v. Budweiser Brew House*, No. 22-7160, 2023 WL 8351588, at *1 (D.C. Cir. June 20, 2023) (per curiam) (unpublished). By contrast, the relevant statutory provision, which Section 791 incorporates by reference, appears at first blush to contemplate emotional-distress damages. *See* 42 U.S.C. § 1981a(b)(3) (placing limits on the amount of, but not precluding, “compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses”). But because the parties have not offered any meaningful argument as to whether Section 791’s grant of compensatory damages encompasses emotional-distress damages, and they cite no relevant authority, the Court will deny Defendants’ motion to dismiss that claim for damages at this time.

### F. Leave to Amend and Jurisdictional Discovery

Finally, Ms. Hogg requests that the Court (1) grant her leave to amend to add a wrongful-termination claim and (2) permit her jurisdictional discovery regarding exhaustion. Pl.’s Opp’n at 9, 40. Defendants oppose both requests, *see* Reply at 20–21. The Court partially grants the former request and denies the latter.

Regarding leave to amend, as the Court has explained, it lacks jurisdiction over any termination-related claims, so any such amendment would be futile. *See Ponce v. Billington*, 652

F. Supp. 2d 71, 74 (D.D.C. 2009) (denying as futile leave to amend because the plaintiff "failed to exhaust administrative remedies"). However, if Ms. Hogg wishes to amend for any other reason, including remedying any deficiencies identified in this opinion, she is granted leave to do so within thirty days of this decision. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("It is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as undue delay, bad faith or dilatory motive repeated failure to cure deficiencies by previous amendments or futility of amendment." (cleaned up)).

As for jurisdictional discovery, Ms. Hogg has not explained what facts she could uncover that might assist in her quest for jurisdiction. She says only that "any perceived deficiency warrants leave to amend or jurisdictional discovery." Pl.'s Opp'n at 9. "When requesting jurisdictional discovery, a plaintiff must make a detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *Williams v. ROMARM*, 187 F. Supp. 3d 63, 72 (D.D.C. 2013) (cleaned up), *aff'd sub nom. Williams v. Romarm, SA*, 756 F.3d 777 (D.C. Cir. 2014); *see also Stokinger v. Armslist, LLC*, 166 F.4th 229, 244–45 (1st Cir. 2026) (affirming district court's denial of jurisdictional discovery where the plaintiff chose to make their request in their opposition rather than a separate motion and did so "in a most skeletal manner"). Ms. Hogg already has her own administrative complaints, the agency's Notice of Acceptance Letter, and the agency's Final Decision. She does not explain what more she needs. She therefore has not carried her burden to establish an entitlement to jurisdictional discovery.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The Court dismisses Counts II and III (retaliation and disparate treatment), but it does not

dismiss Count I (failure to accommodate). The Court also dismisses Ms. Hogg's request for punitive damages but not her request for emotional-distress damages. Finally, the Court partially grants Ms. Hogg's request for leave to amend and denies her request for jurisdictional discovery. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 16, 2026

RUDOLPH CONTRERAS
United States District Judge